(No. 51469—Decided
March 3, 1987.)

*Thomas H. DeChant,* for appellants.

*Robert Warner* and *Michael J. Meehan,* for appellee.

PATTON, J. Appellants Dorothy A. Stinson and Samuel R. Stinson have appealed from the entry of summary judgment against them on their complaint for negligence against appellee Cleveland Clinic Foundation arising out of a "slip and fall." The facts giving rise to this appeal are as follows.

Appellant Dorothy Stinson left her residence in the early morning hours of February 19, 1985 to join her husband at the Cleveland Clinic. Mr. Stinson was to undergo surgery later that day.

Mrs. Stinson left her home after 4:00 a.m. and arrived at the Cleveland Clinic at or around 5:30 a.m. She stated that the weather was cold, but there was no precipitation at the time. She also stated that the roads were dry and "perfectly wonderful."

Upon arriving at the Clinic, Mrs. Stinson proceeded to walk along the sidewalk abutting the property that led to the hospital entrance doors. In deposition, Mrs. Stinson stated that she did not observe any snow or ice as she approached the Clinic, but also acknowledged that she did not look for ice since she felt it was "perfectly safe" to walk. She did not wear boots. With regard to the lighting conditions, she indicated that is was "well lit from the standpoint of [the lights] being dim."

Mrs. Stinson then observed what appeared to be a "wet spot" on the sidewalk. It was approximately two feet in size. She stated that after she stepped into the middle of the "wet spot," her feet gave out from under her, her left ankle snapped, and her head sustained injuries in the resulting fall. Thereafter, several Clinic security officers assisted Mrs. Stinson to her feet.

The record indicates that the area had experienced snowfall several days before Mrs. Stinson's slip and fall. On February 12, the city of Cleveland received 1.5 inches of snow; on February 13, 8.1 inches; on February 14, 1.7 inches; and on February 15, 1.7 inches. The record also indicates that from February 18 to February 19, the morning of the accident, the region experienced seasonal fluctuations in temperature: On February 18, the area saw temperatures at or around forty degrees F. By 6:00 a.m. on February 19, shortly after Mrs. Stinson's accident, the temperature had plunged fourteen

degrees to approximately twenty-six degrees F.

As a result of the previous days' snowfall, maintenance employees at the Clinic apparently plowed the various sidewalks surrounding the Clinic. Along the walkway where Mrs. Stinson passed, the snow had been piled up several inches high along the grass, away from the street. When the snow melted, it ran from the grass, across the sidewalk, and to the street. When the temperature again dropped, a thin patch of ice formed on the sidewalk upon which Mrs. Stinson slipped and fell. The security personnel on duty on the morning in question did not inspect all of the various walkways for ice, although they acknowledged in deposition that one of their duties was to inform maintenance of any hazards.

Appellants filed their complaint on April 24, 1985. After answering the complaint, appellee served a motion for summary judgment on November 1, 1985. On December 23, the trial court granted appellee's motion for summary judgment. This appeal followed.

For their appeal, appellants assert five assignments of error:

"I. The trial court erred in granting defendant's motion for summary judgment because the submitted evidence, when viewed in a light most favorable to plaintiff[s], demonstrates that the issue of negligence is in genuine dispute at a minimum and should be submitted to the triers of fact.

"II. The judgment of the trial court is contrary to law in that the evidence clearly established defendant's negligence as the proximate cause of plaintiff's injuries.

"III. The trial court erred in granting defendant's motion for summary judgment where the evidence established that defendant's hospital employees created a patch of ice on its private sidewalk by plowing snow into a pile on the high side or edge of the sidewalk, so that the pile of snow could alternately thaw and refreeze and flow across the sidewalk towards the street creating a hazard for the sick, aged, injured and infirm patients and other invitees who used that sidewalk to enter the hospital. When plaintiff slipped and fell on that patch of ice, a jury question was created at a minimum.

"IV. The trial court erred in granting defendant's motion for summary judgment where defendant's agents' uncontradicted testimony establishe[d] that the thin sheet of clear ice on the sidewalk came from a pile of snow, which had been placed at the high edge of the sidewalk by defendant's employees, * * * [and] had melted during the warmer periods of time while the sun was out, and then refroze during the night changing from a thin puddle of water to a thin sheet of ice.

"V. The trial court erred in granting defendant's motion for summary judgment where the uncontradicted evidence establishe[d] that defendant's security employee-agent was positioned in an observation point less than 100 feet away from the thin sheet of ice on the sidewalk for a period of approximately four hours prior to the plaintiff's slip and fall and during that four-hour period of time, failed to ascertain whether said water running across the sidewalk from a pile of snow, placed there by defendant's snow clearing agents at an earlier time, had remained water or whether it had become ice as the temperature dropped in the early morning hours."

Appellants' five assignments of error essentially address the same issue and accordingly will be discussed together. The issue presented is whether appellants submitted sufficient documentary evidence in opposition to appellee's motion for summary judgment to establish that genuine issues of

material fact exist concerning appellants' claim for negligence against appellee Cleveland Clinic Foundation and that appellee is not entitled to judgment as a matter of law. Based on our review of the record, we conclude that summary judgment was improperly granted.

Under Civ. R. 56(C), a court may not enter a summary judgment unless the documentary evidence submitted establishes that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. In *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 24 O.O. 3d 1, 433 N.E. 2d 615, the court acknowledged that summary judgment is a procedural device which terminates litigation and avoids a formal trial when there is nothing to try. *Id.* at 2, 24 O.O. 3d at 2, 433 N.E. 2d at 616. The court noted, however, that summary judgment " '* * * must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * *' " *Id.* The summary judgment procedure should not be used to usurp the litigant's right to a trial where there are conflicting facts and inferences. *Viock* v. *Stowe-Woodward Co.* (1983), 13 Ohio App. 3d 7, 15, 13 OBR 8, 16, 467 N.E. 2d 1378, 1386.

In the case *sub judice*, it is necessary to determine whether appellants presented sufficient factual allegations to suggest that appellee breached a duty of care owed to Dorothy Stinson. A visitor of a patient in a hospital is an invitee, and the hospital accordingly owes such invitee a duty of ordinary or reasonable care in maintaining the premises, including the means of ingress and egress, in a reasonably safe condition so that persons are not unnecessarily and unreasonably exposed to danger. See *Bowins* v. *Euclid General Hosp.* (1984), 20 Ohio App. 3d 29, 20 OBR 31, 484 N.E. 2d 203. See, also, *Paschal* v. *Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St. 3d 203, 18 OBR 267, 480 N.E. 2d 474; *Perry* v. *Eastgreen Realty Co.* (1978), 53 Ohio St. 2d 51, 7 O.O. 3d 130, 372 N.E. 2d 335. We expressly reject appellants' invitation to recognize that a hospital owes a "higher" standard of care simply because some persons going to the hospital are elderly, sick or otherwise infirm to varying degrees. Such a rule has never been recognized in Ohio, and we decline to do so today. Nevertheless, the issue in this appeal is whether the hospital or its agents failed to exercise ordinary care under the circumstances of this case where it was reasonably foreseeable that a significant number of persons, both able-bodied and infirm, would traverse along the sidewalk leading to the hospital entrance doors and where the hospital's security staff did not inspect the sidewalk nor advise hospital maintenance of any hazards on the walkways. We are persuaded that triable issues of fact exist and render the entry of summary judgment improper.

In *Bowins* v. *Euclid General Hosp., supra,* we stated:

"* * * As a general rule, a hospital owes no duty to a visitor using its parking lot to remove natural accumulations of ice and snow from its parking area. * * * Such conditions are ordinarily so obvious that an owner or occupier of premises may reasonably expect that an invitee will discover them and protect himself against them. * * * Only when ice and snow, which the owner or occupier knows or should know, have created a condition substantially more dangerous to an invitee than he could reasonably anticipate will the owner's failure to remove the ice and snow constitute negligence.

\* \* \* Even then, if the owner or occupier and the invitee are equally aware of the dangerous condition and the invitee voluntarily exposes himself to the hazard, the owner or occupier will not be liable. \* \* \* An invitee is required to exercise some degree of care for his own safety. \* \* \*'' (Citations omitted.) 20 Ohio App. 3d at 31, 20 OBR at 32-33, 484 N.E. 2d at 205.

We note that the dispute in *Bowins* was tried to a jury.

Appellants maintain that the patch of ice on the sidewalk was a *nonnatural* accumulation of ice. See, *e.g., Tyrrell* v. *Investment Assoc., Inc.* (1984), 16 Ohio App. 3d 47, 16 OBR 50, 474 N.E. 2d 621. In *Tyrrell,* this court held that it was error to direct a verdict in favor of the defendant-drugstore where the plaintiff's evidence at trial established that water dripping off a canopy onto an area markedly different from the surrounding conditions could constitute a nonnatural accumulation of ice. *Id.* at 48-50, 16 OBR at 51-53, 474 N.E. 2d at 624-625.

In the instant appeal, appellants similarly contend that Mrs. Stinson slipped on a nonnatural accumulation of ice. The appellee plowed the snow from the sidewalk onto the grass abutting the sidewalk, which grass was on a graded incline. Due to the "freeze and thaw" cycle, the melted snow flowed from the grass onto the walkway and allegedly created a nonnatural accumulation of ice. While we express no opinion as to the merits of appellants' theory, we are persuaded that it raises a genuine issue of material fact as to whether this condition was reasonably foreseeable.

Appellants further contend that actionable negligence arose when the hospital's security staff failed to inspect the walkways and inform hospital maintenance of ice on the sidewalk. One security officer acknowledged in deposition that one of the duties of the security staff was to advise the maintenance staff of such hazards. We believe that there exists a triable issue of fact as to whether hospital security exercised reasonable care in not inspecting this particular sidewalk under the circumstances of this case. Moreover, we are not convinced that Mrs. Stinson's statement that the sidewalk was "well lit from the standpoint of [the lights] being dim" raises no issue of fact as to the adequacy of the lighting under these circumstances.

Accordingly, we conclude that the trial court improperly granted appellee's motion for summary judgment. The judgment is reversed, and this case is remanded for further proceedings.

*Judgment reversed and cause remanded.*

HOFSTETTER, J., concurs.

KRUPANSKY, J., dissents.

HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.

KRUPANSKY, J., dissenting. I must respectfully dissent from the majority opinion due to the fact the majority's interpretation of *Bowins* v. *Euclid General Hosp.* (1984), 20 Ohio App. 3d 29, 20 OBR 31, 484 N.E. 2d 203, is misplaced. Specifically, the majority identifies the law in *Bowins* applicable to the case *sub judice,* but then proceeds to ignore the quotation to create a genuine issue of material fact as to "whether hospital security exercised reasonable care in not inspecting this particular sidewalk under the circumstances of this case."

In *Bowins, supra,* this court held as follows:

"\* \* \* Only when ice and snow, which the owner or occupier *knows or*

*should know,* have created a condition substantially more dangerous to an invitee than he could reasonably anticipate will the owner's failure to remove the ice and snow constitute negligence. * * * *Even then, if the owner or occupier and the invitee are equally aware of the dangerous condition and the invitee voluntarily exposes himself to the hazard, the owner or occupier will not be liable. * * * An invitee is required to exercise some degree of care for his own safety. * * *"* (Citations omitted and emphasis added.) *Id.* at 31, 20 OBR at 32-33, 484 N.E. 2d at 205.

The majority claims a triable issue of fact exists as to whether appellee knew or should have known about the condition of the sidewalk. In this regard the court asserts there exists an issue of material fact relative to whether the security personnel should have inspected the sidewalk and alerted the maintenance department as to the condition of the sidewalk, assuming, of course, a hazard existed on the sidewalk so as to necessitate contacting the maintenance department.

In reversing the trial court's grant of summary judgment in favor of appellee, the majority places a higher duty of care upon the hospital than that which is owed to Mrs. Stinson as an invitee of the hospital. Specifically, an invitee is owed a duty of ordinary care, *i.e.,* the owner must use ordinary care in maintaining his premises free from dangers which are not discoverable by an ordinary person using reasonable care. *Davis* v. *Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E. 2d 663. In requiring the security personnel to personally inspect the sidewalk and constantly alert the maintenance department as to its ever-changing and plainly discernible condition, the majority places an unduly high standard of care upon the security personnel, not the

reasonable ordinary degree of care owed an invitee. As the record reveals, sidewalk inspection is an *incidental* duty placed upon the security personnel. Their primary duty is to provide for the security of the hospital, its staff and invitees. In this regard appellee's security department is similar to a police department in that the police provide for the security of a municipality's citizenry and do not distract themselves with sidewalk inspection. The majority's analysis, however, militates against effective performance of this primary duty by requiring security personnel to constantly inspect the sidewalks in order to alleviate liability in these types of slip and fall cases.

In the event the security personnel are imbued with the higher degree of care advocated by appellants and accepted by the majority, Mrs. Stinson's voluntary exposure to the sidewalk condition precludes any liability on behalf of the hospital. In this regard *Bowins, supra,* states as follows:

"* * * Even then, if the owner or occupier and the invitee are equally aware of the dangerous condition and the invitee voluntarily exposes himself to the hazard, the owner or occupier will not be liable. * * * An invitee is required to exercise some degree of care for his own safety. * * *" (Citation omitted.) *Id.* at 31, 20 OBR at 33, 484 N.E. 2d at 205.

As an initial matter, both Mrs. Stinson and the security personnel were equally aware of the falling temperature. The record reveals Mrs. Stinson described the temperature as "cold." Moreover, the record reveals Mrs. Stinson voluntarily exposed herself to the hazard which caused her injury. In this regard Mrs. Stinson testified in deposition that there was an ice patch of approximately two feet by five feet in the *middle* of the sidewalk. The remainder of the sidewalk and surrounding area was dry, *i.e.,* free of ice.

Mrs. Stinson voluntarily chose to walk upon this "postage stamp" area of ice rather than simply walk to the side and avoid the hazard. The area was open to view. The sidewalk condition was clearly discernible and the area was well lit. Mrs. Stinson's awareness of the decreasing temperature, coupled with her voluntary entrance on the ice when the immediate surrounding area was dry and safe to traverse, precludes the hospital, as a matter of law, from being found negligent.

For the foregoing reasons, I would affirm the trial court's grant of summary judgment.