Plaintiffs-appellants William Mariner and Mary Mariner (hereafter collectively referred to as "plaintiffs") filed this action for bodily injury and loss of consortium after William Mariner slipped and fell on ice that was on the sidewalk at the River Square Shopping Center in Rocky River, Ohio. The shopping center was owned and operated by defendant-appellee Wald Fisher Inc. (hereafter "defendant"). The trial court granted the defendant's motion for summary judgment and the plaintiffs are appealing that ruling. We conclude that the trial court correctly determined that there were no genuine issues of material fact and that the defendant was entitled to judgment as a matter of law. We therefore affirm the judgment.
The evidence submitted below reflects that on March 23, 1996, William Mariner drove to the shopping center and had lunch at the Linden Lounge, which was one of several business establishments at the River Square strip mall. Mr. Mariner recalled that the road conditions were snowy and that the temperature was "about freezing." R. 22, Defendant's Motion for Summary Judgment at Exh. A: Mariner Depo. (hereafter "Mariner Depo.") at 7. Mr. Mariner recalled that it was not snowing at the time but the area had received seven inches of snow about three days earlier. Mariner Depo. at 14. He noted that the shopping center's parking lot appeared to have been plowed but "[n]ot very well" and that there was a combination of snow and ice on the parking lot surface and on the sidewalk. Id. at 12, 13.
Upon exiting the Linden Lounge at about 3:00 p.m., Mr. Mariner slipped on an accumulation of ice as he was stepping from the sidewalk onto the parking lot. Id. at 33-34, 42. The ice appeared to have been formed from water that dripped off the slanting roof that did not have any drains or gutters. Id. at 34-35.
The defendant moved for a summary judgment on the grounds that the ice on which Mr. Mariner fell was a natural accumulation of ice and that the condition was open and obvious. In addition to submitting Mr. Mariner's deposition testimony, the defendant submitted an affidavit from Dennis Fisher, the defendant's agent, in which he averred that "a patron of the shopping center has never fallen in the alleged area of the parking lot at any time in all the years of ownership of the property." R. 22, Defendant's Motion for Summary Judgment at Exh. E: Affidavit of Dennis J. Fisher (hereafter "Fisher Affidavit") at ¶ 3. The defendant represented that it "maintains the property and contracts with reputable professionals to plow snow." Fisher Affidavit at ¶ 4. It also reported: "The gutters on the building in question are fastened properly to the building and were fastened properly to the building at the time of the alleged incident." Fisher Affidavit at ¶ 5.
In response, the plaintiffs asserted that the accumulation of ice on which Mr. Mariner slipped was caused by the absence of any gutters on the building. They controverted ¶ 5 of the Fisher Affidavit by submitting an excerpt from the deposition of Dennis J. Fisher, whose counsel stated in response to the subpoena ducestecum: "There is no information regarding gutters as there are no gutters on this building." R. 27, Plaintiffs' Brief in Opposition at Exh. D: Fisher Depo. at 3-4. The plaintiffs also submitted photographs that purport to depict the scene of the incident. R. 27, Plaintiffs' Brief in Opposition at Exh. A. The plaintiffs denied that the ice on which Mr. Mariner slipped was a natural accumulation of ice and that it was open and obvious. The plaintiffs maintained that this was an unnatural condition caused by the absence of a gutter so that when water dripped off the building and the temperature was below freezing, a strip of ice formed on the pavement between the various stores and the parking lot.
The trial court granted the defendant's motion for summary judgment with a journal entry that said, in relevant part: "Melting ice dropping off a roof onto a paved surface is not an unnatural accumulation of ice or snow." The plaintiffs appeal that ruling and raise the following assignment of error for review:
 THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT DUE TO THE EXISTENCE OF GENUINE ISSUES OF MATERIAL FACT.
We conclude that the assignment of error is not well taken.
We review the trial court's granting of summary judgment de novo in accordance with the standards set forth in Ohio Civ.R. 56(C). N. Coast Cable L.P. v. Hanneman (1994). 98 Ohio App.3d 434,440. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997). 77 Ohio St.3d 421,430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See also Mitseffv. Wheeler (1988), 38 Ohio St.3d 112. A summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. State exrel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 473;Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
An owner or occupier of land generally owes a duty to business invitees to exercise ordinary care to maintain the premises in a reasonably safe condition. Paschal v. Rite Aid Pharmacy, Inc.
(1985). 18 Ohio St.3d 203; Boles v. Montgomery Ward Co. (1950),153 Ohio St. 381, syllabus at paragraph 1. But Ohio law also establishes that
 an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow.
Brinkman v. Ross (1993), 68 Ohio St.3d 82, 83. See also Sidle v.Humphrey (1968), 13 Ohio St.2d 45; Debie v. CochranPharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38. The underlying rationale for this rule "is that everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow." Brinkman,68 Ohio St.3d at 84.
Liability may attach if the owner or occupier negligently causes or permits an unnatural accumulation of ice or snow to exist. See Lopatkovich v. City of Tiffin (1986), 28 Ohio St.3d 204,207; Tyrrell v. Investment Associates, Inc. (1984), 16 Ohio App.3d 47. In Porter v. Miller (1983), 13 Ohio App.3d 93, the court distinguished natural from unnatural snow accumulations this way:
 "Unnatural" accumulation must refer to causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., to causes other than the meteorological forces of nature. By definition, then, the "unnatural" is the man-made, the man-caused; extremely severe snow storms or bitterly cold temperatures do not constitute "unnatural" phenomena.
Id., 13 Ohio App.3d at 95 (emphasis in original). In Myers v.Forest City Enterprises, Inc. (1993), 92 Ohio App.3d 351, appealdismissed (1994), 69 Ohio St.3d 1213, the court further clarified:
 In cases involving an unnatural accumulation of ice and snow, a plaintiff must show that the defendant created or aggravated the hazard, that the defendant knew or should have known of the hazard, and that the hazardous condition was substantially more dangerous than it would have been in the natural state. Melting snow that refreezes into ice is natural, not an unnatural accumulation of ice.
Id., 92 Ohio App.3d at 353-354 (citations omitted).
In the case at bar, the defendant, relying on Mr. Mariner's deposition testimony, contended in part that the ice on which Mr. Mariner slipped constituted a natural accumulation of ice and snow. The plaintiffs, on the other hand, insist that the ice on which Mr. Mariner slipped was not a natural accumulation caused by ordinary weather conditions but rather an unnatural accumulation caused by the absence of gutters on the building.[1]
The issue then is whether the plaintiffs' evidence, when construed most strongly in their favor, established any genuine issue of material fact as to whether the ice on which Mr. Mariner fell was an unnatural accumulation of ice. We conclude that it did not because snow which melts, drips off a roof and freezes on the ground below is not an unnatural accumulation of ice just because the building lacks a gutter.
In Martin v. Hook SuperX, Inc. (Mar. 18, 1993), Franklin App. No. 92AP-1649, unreported, the plaintiff alleged that she fell on an unnatural accumulation of ice caused by melted snow that dripped from a mansard roof that lacked gutters over the entry way to the defendant's establishment. The plaintiff did not present evidence to show that the roof was defective merely because its design did not include a gutter. The court affirmed the summary judgment in favor of the defendant after finding that the plaintiff's evidence did not establish a triable issue of fact:
 Appellant can point to no specific evidence tending to show an affirmative act of negligence on appellee's part. In order to prevail, appellant must present evidence that some act of omission or commission on appellee's part rendered the accumulation unforeseeably dangerous to her or unnatural in derivation. The melting of ice and snow and subsequent refreezing is insufficient, standing alone, to impose liability. Appellant must show that appellee committed some act of negligence or exhibited greater knowledge, not that the designers of the building should or should not have provided additional protection. This is especially true in light of appellee's assertions that she had lived in Ohio for a considerable time, was acquainted with winter conditions, and that she was familiar with the entrance to appellant's [sic] business. Quite simply, no evidence was introduced from which an inference of negligence could be adduced.
Martin v. SuperX, Inc., supra, at **2.
Similarly, in Bach v. Gatsby Saloon, Inc. (June 1, 1995), Franklin App. No. 94APE12-1781, unreported, the plaintiff alleged that the absence of a gutter on the awning or roof over the stairs caused excess water to run off the downward slope of the roof and produce an unnatural accumulation of ice. The court affirmed summary judgment in favor of the defendant after determining that the plaintiff's evidence did not show that the property owner negligently maintained a hazard or exhibited greater knowledge of a dangerous condition.
 Thus, even construing appellant's affidavit most favorably towards appellant and finding that the affidavit constitutes evidence that the ice accumulated because the roof lacked a gutter, the evidence is insufficient to show that the slippery condition was anything other than a natural accumulation of ice.
Bach, at **3.
By contrast, the plaintiff in Martin v. Edgewater Properties
(Nov. 25, 1992), Lorain App. No. 92CA005307, unreported, claimed that her apartment building lacked roof gutters and that melted snow drained and re-froze on the porch at the sole entranceway, but her evidence additionally showed that the absence of a gutter on her apartment was a building defect:
 Here, there was testimony by the building inspector for the City of Vermilion that roof drainage from a roof onto a porch is not in accordance with applicable building code requirements. Also presented was the testimony of an architectural designer stating that without a proper means of carrying melted snow to the ground, water from the roof of the apartment building would drip onto tenants' porches creating a hazard. There was further testimony that at the time of the accident the apartment building at issue was without gutters. This testimony presented at least a genuine issue of material fact as to whether the accumulation of ice on the porch was a natural or unnatural accumulation. Therefore, the trial court did not err in refusing to direct the verdict and allowing this issue to go to the jury.
Martin v. Edgewater Properties, at **2.
When we review the evidence here most favorably to the plaintiffs, we find their evidence showed only that the defendant's roof lacked a gutter and that melted snow dripped off the roof and re-froze on the sidewalk below. The plaintiffs' evidence did not demonstrate that the absence of a gutter was a building defect or that the defendant otherwise caused the accumulation of ice on which Mr. Mariner slipped. As was the case in Martin v. SuperX, Inc., supra, and Bach, supra, and in contrast to the evidentiary showing made in Martin v. EdgewaterProperties, supra, the absence of a gutter by itself does not establish that snow which melts, drips off a roof and freezes on the ground below is an unnatural accumulation of ice for which the property owner may be liable.[2] The plaintiffs' evidence here did not show that this icy condition was substantially more dangerous than ice which occurs naturally. Their evidence gave no reason to doubt that the ice on which Mr. Mariner slipped resulted only from the all too familiar "meteorological forces of nature." Cf. Porter v. Miller, supra.
The plaintiffs additionally rely on photographs which show that ice was present on pavement outside the perimeter of the building's roof but not on pavement located under the perimeter of the roof. Although the plaintiffs presented no testimonial evidence to explain the date of the photographs or their relevance to the issues in this case, we assume the photographs were intended to depict that ice formed after it dripped off the roof. But we see nothing remarkable about the fact that ice was present where the roof overhang ended and the sidewalk was exposed, but not on the sidewalk protected under the perimeter of the roof. The plaintiffs' evidence provides no reason to infer that the building itself was in any way defective. The evidence here does not suggest that this ice accumulation was unnatural.
The plaintiffs rely in part on Stinson v. Cleveland ClinicFoundation (1987), 37 Ohio App.3d 146, in which the court held that there was an issue of fact as to whether the property owner's snow removal created an unnatural accumulation of ice that it negligently failed to inspect. But unlike the evidence presented in that case, the plaintiffs here did not present evidence to suggest that the defendant caused an unnatural ice accumulation. The plaintiffs' reliance on Kunz v. Boliantz (June 11, 1993), Richland App. No. 92-CA-73, unreported, is similarly misplaced because the evidence there was that the accumulation of ice was caused by an overflow of water from the roof gutter above the stairway. This case by contrast does not involve an overflowing gutter as in Kunz but instead involves the absence of a gutter.
While we conclude that this was a natural accumulation of ice, which ordinarily relieves a property owner from legal liability, this conclusion does not necessarily end our inquiry. Although the plaintiffs do not separately argue the point, they cite caselaw that recognizes an exception to the general rule if the owner has actual or constructive notice that the natural accumulation of ice or snow created a substantially more dangerous condition than that which the invitee should otherwise expect. See Weaver v. Standard Oil Co. (1989), 61 Ohio App.3d 139
(issue of fact existed as to whether ice on steel plate covering filler pipe attached to subterranean gasoline storage tank created substantially more dangerous condition). See also Mikulav. Slavin Tailors (1970), 24 Ohio St.2d 48 (snow that concealed seven-inch deep hole in parking lot created substantially more dangerous condition).
But the plaintiffs in the case at bar did not present evidence suggesting that the ice on which Mr. Mariner slipped created a substantially more dangerous condition than a pedestrian should otherwise expect or that this defendant had actual or constructive notice of such a condition. The defendant's evidence by contrast denied that the defendant had notice that a dangerous condition existed when it affirmatively asserted that "a patron of the shopping center has never fallen in the alleged area of the parking lot at any time in all the years of ownership of the property." Fisher Affidavit at ¶ 3. The plaintiffs did not present any evidence to create a triable issue of fact.
We conclude that the trial court correctly found the evidence established only that Mr. Mariner slipped and fell on a natural accumulation of ice, that the defendant did not violate a duty of care to him under these circumstances, and that the defendant was therefore entitled to judgment as a matter of law.[3] Accordingly, we overrule the plaintiffs' assignment of error.
The judgment is affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and
 KENNETH A. ROCCO, J., CONCUR.
DIANE KARPINKSI JUDGE
[1] Although there was contradictory evidence presented as to whether or not the building had gutters, we construe the evidence most favorably to the plaintiffs and accept as true that the building did not have gutters.
[2] In cases in which a gutter was in place, the invitee who claimed that ice was an unnatural accumulation similarly had the burden to establish that the gutter was defective or that the defendant's negligence otherwise caused the accumulation of ice or snow. Compare Bailey v. St. Vincent DePaul Church (May 8, 1997), Cuyahoga App. No. 71629, unreported (invitee presented no proof of defective roof or gutters); Luttermoser v. MaplecrestAssociates, Ltd. (May 25, 1995), Cuyahoga App. No. 67616, wunreported (invitee presented no proof that defendant caused water to drip from overhead beam); Hoenigman V. McDonald's Corp.
(Jan. 11, 1990), Cuyahoga App. No. 56010, unreported (invitee presented no proof of defective roof or gutters); with Kirschnickv. Jilovec (Aug. 31, 1995), Cuyahoga App. No. 68037, unreported (blocked gutter caused water overflow); Nawal v. Clearview Inn, Inc. (Aug. 4, 1994). Cuyahoga App. No. 65796 (clogged or broken downspout and gutter allegedly caused ice accumulation); Perottiv. Gordon Square Restaurant Lounge (July 27, 1989), Cuyahoga App. No. 55639, unreported (defective condition in gutter/ornamental wood molding over lounge entrance caused ice accumulation); Tyrrell v. Investment Associates, Inc. (1984),16 Ohio App.3d 47 (defective canopy caused unnatural ice accumulation). See also Dian v. Dunlap (July 25, 1996), Cuyahoga App. No. 69856, unreported (ice caused by defective downspout but invitee knew of icy condition).
[3] Because the defendant was entitled to judgment as a matter of law on this ground, it is unnecessary for us to separately address the defendant's alternative ground for summary judgment which contended that the condition Mr. Mariner faced was open and obvious.