[Cite as *Allen v. USA Parking Sys., Inc.*, 2011-Ohio-6642.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

ANDREW ALLEN,                  )
)      CASE NO. 10 MA 175
     PLAINTIFF-APPELLANT,     )
)
     - VS -                       )      OPINION
)
USA PARKING SYSTEMS, INC.     )
)
     DEFENDANT-APPELLEE.     )

CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas
Court, Case No. 09 CV 1853.

JUDGMENT:                           Affirmed.

APPEARANCES:
For Plaintiff-Appellant:                Attorney Mark Verkhlin
839 Southwestern Run
Youngstown, OH 44514

For Defendant-Appellee:             Attorney Justin Dublikar
Attorney William M. Shackelford
50 South Main Street, Suite 615
Akron, OH 44308

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio

Dated: December 15, 2011

DeGenaro, J.

{¶1} Plaintiff-Appellant, Andrew Allen, appeals the decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of USA Parking Systems, Inc. in a slip and fall negligence action. Allen contends that summary judgment was improper because material questions of fact existed as to whether he fell on a natural accumulation of snow or ice, whether loose concrete or a poorly maintained parking lot caused his fall, and whether USA Parking had superior knowledge of the dangerous condition of the lot. Allen's arguments are meritless.

{¶2} Allen fell on a natural accumulation of ice caused by the freeze and thaw cycle due to temperature change. The record contains no evidence that USA Parking did anything to cause an unnatural accumulation of ice to form. Further, there is no evidence in the record that Allen fell on loose concrete; this argument is mere speculation. Finally, Allen knew that the lot was sloped and that snow can melt and refreeze into ice in wintertime. The condition of the lot was an open and obvious danger such that USA Parking owed no duty to warn Allen of it. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On May 19, 2009, Allen filed a complaint alleging that on December 15, 2005, he parked his vehicle in a parking lot owned by USA Parking, and while walking through the lot, he fell on loose concrete, snow, and/or ice; and as a result, he broke his left wrist. Allen further alleged USA Parking was negligent in failing to maintain the concrete in a safe manner or to properly maintain snow in the lot and negligent in failing to warn him that the lot was in an unsafe condition. USA Parking filed an answer setting forth affirmative defenses, inter alia, that Allen's claims are barred because the danger was open and obvious and because he slipped and fell on a natural accumulation of ice and/or snow.

{¶4} On January 14, 2010, USA Parking filed a motion for summary judgment, contending that Allen was a business invitee, and that it had no duty to protect him from open and obvious dangers. USA Parking supported its motion with Allen's deposition.

**{¶5}** Allen testified that he has lived in Youngstown for 48 years. On December 15, 2005 at approximately 10 a.m., he parked at a USA Parking lot, and that he had parked in that lot approximately five times before.

**{¶6}** Allen described the condition of the parking lot on that date as "gray and ice [sic]." He explained that the lot is sloped; and that overnight, not only had snow melted and frozen, a "couple inches" of snow had also fallen and covered that ice. He further explained, "Well, quite naturally it was slippery. And there was no salt. There was no salt, no balance, or no step that had come down off of the hill." He stated that he thought it was "somewhere around about 40, 50" degrees that day. However, he later explained that the snow had not melted so "it would have had to have been beyond 33 degrees so the snow couldn't melt."

**{¶7}** Allen testified that that there was no salt on the lot nor had the lot been plowed or shoveled. When asked if there had been any large piles or drifts of snow pushed by a shovel or plow, Allen responded, "As far as I can see, unless it was some along the side of the building where the wind drifted it up." He also did not notice any maintenance people plowing or shoveling the lot while he was there.

**{¶8}** Allen explained that he parked on the hill and walked down towards the street. He slipped, caught himself, and then tried to be cautious. However, he was walking on the ice and he slipped again; his feet slid out from under him and he fell. He testified that the entire parking lot was covered with snow and there were not any areas where the snow melted and he could see the pavement. He also explained that he knew there was ice under the snow because where his feet slid, he could see the ice. The following exchange then occurred regarding the cause of Allen's fall:

**{¶9}** "Q. Now, Reverend, are you saying that the exact cause of your fall was the snow and ice that you slipped on?

**{¶10}** "A. And the downhill grade.

**{¶11}** "Q. Okay. In your Complaint you also stated that there was loose concrete?

**{¶12}** "A. There was some loose concrete piled up in the back of the parking lot, up on the – up in the upper end.

**{¶13}** "Q. Was there any loose concrete in the exact area –

**{¶14}** "A. No.

**{¶15}** "Q. – where you slipped and fell?

**{¶16}** "A. Huh-uh, I didn't see any."

**{¶17}** USA Parking argued that there was no evidence that the snow or ice Allen slipped on was not a natural accumulation. Further, because Allen testified in his deposition that he did not see loose concrete in the area that he fell, there was no evidence that loose concrete caused Allen's fall. Finally, USA Parking argued that it did not have a duty to warn Allen of the condition of the parking lot because the snow and ice was an open and obvious danger and it did not have superior knowledge of the danger. It thus urged the court to grant summary judgment in its favor because Allen had failed to establish a claim for negligence.

**{¶18}** On April 3, 2010, Allen filed a response to USA Parking's motion for summary judgment, arguing that there was a question of material fact whether he fell on a natural or unnatural accumulation of snow and ice. He contended that "the accumulation was man-caused since the water causing the ice came from a natural source, namely, snow and ice, but it was unnaturally impeded" on USA Parking's lot. He noted that the lot was plowed on the date he fell, as evidenced by USA Parking's interrogatory answer and deposition testimony which revealed that the lot was usually plowed between 6 and 7 a.m. He also noted that the lot was on a slope, which caused the water to run to the bottom of the hill and freeze where Allen fell. Further, Allen argued that there was a question of material fact whether he fell on loose concrete, pointing to his deposition testimony that he could not see the lot beneath the snow and that loose concrete was piled in the lot, as well as USA Parking's interrogatory answer that portions of the lot were uneven. Finally, Allen contended that USA Parking had superior knowledge of the danger of snow and ice because it owned the lot and knew of its design and that water would run down the slope and freeze at the bottom. Moreover, USA Parking did not have any warning about these conditions posted on the lot.

**{¶19}** Allen attached several exhibits to his response to USA Parking's motion for

summary judgment, including his deposition and the deposition of Jeffrey Hamm, the regional operations manager for USA Parking. Hamm testified in his deposition that a contractor called Complete Lot Maintenance plowed USA Parking's lots, and he provided statements from Complete Lot Maintenance, which were also attached as Exhibit 2. He explained that his signature appeared on Exhibit 2, and he had written "okay to pay," which meant that the jobs listed on the invoice were completed. He further testified that Complete Lot Maintenance and USA Parking had agreed that the plowing would be done between 6 and 7 a.m. so that it was completed before people start parking in the lot. When asked if he recalled if they plowed between 6 and 7 a.m. on December 15, 2005, Hamm responded that he could not answer that. He also explained that the lot in question is known as "Ralph's Lot." Finally, he testified that he did not know of any warning signs posted on the lot on December 15, 2005, and that it was not regular practice to put up signs when there is potential for snow and ice on a parking lot.

{¶20} Allen also attached USA Parking's response to his first request for admissions as Exhibit C and USA Parking's responses to his first set of interrogatories as Exhibit D. In Exhibit C, USA Parking admitted that no warning signs regarding the condition of the parking lot were present in the lot on the date of Allen's fall. In Exhibit D, in response to a question about the condition of the parking lot on December 15, 2005, USA Parking objected and stated that it "cannot remember the exact condition of the lot on December 15, 2005 other than it may have been snow covered and icy pursuant to the weather conditions in Northeast Ohio. Defendant does believe that some parts of the paved lot may have been uneven, however, Defendant also believes that the entire surface of the lot was open and obvious to any observation of any individual entering, exiting, or traversing said lot and that any defects, which are denied, were readily observable and open and obvious." USA Parking also stated that the lot was plowed on December 15, 2005.

{¶21} On August 23, 2010, the magistrate issued a decision granting USA Parking's motion for summary judgment, finding in pertinent part:

{¶22} "Plaintiff had experienced over forty Youngstown winters prior to traversing

the snow covered parking lot adjacent to his attorney's office. Plt's Depo. at 9. The parking lot was snow covered. *Id.* at 26. As Plaintiff stated: '[q]uite naturally it was slippery.' *Id.* at 17. He had parked in the lot several times before the day he fell. The slope of the lot was evident. While the wisdom of a public policy that fails to encourage parking lot owners to effectively salt sloped parking lots is debatable, under Ohio law, Defendant is not liable to Plaintiff under the circumstances evidenced in this case. The peril of slipping on ice and snow in the parking lot was a foreseeable hazard common to Youngstown, Ohio in the winter."

**{¶23}** On September 3, 2010, Allen filed objections to the magistrate's decision, arguing that the magistrate erred in granting summary judgment, advancing essentially the same arguments raised in his opposition to USA Parking's motion for summary judgment.

**{¶24}** On November 1, 2010, the trial court issued a judgment entry overruling Allen's objections and adopting the magistrate's decision granting summary judgment in favor of USA Parking.

## Summary Judgment

**{¶25}** Allen asserts in his sole assignment of error:

**{¶26}** "The Trial Court erred when it overruled the Objections to the Magistrate's Decision and adopting the decision of the magistrate when questions of material fact existed as to whether Plaintiff's fall was caused by a natural accumulation of snow and ice, whether it was actually ice that caused Plaintiff's fall or whether sufficient warnings existed as to the condition of the lot, as Defendant failed to show that summary judgment was proper pursuant to Civ.R. 56."

**{¶27}** Allen raises three issues which are interrelated and will be discussed together:

**{¶28}** "If Plaintiff's fall was caused by an accumulation of snow and ice, then questions of material fact existed as to whether that accumulation was natural or unnatural and granting summary judgment was improper as questions of material fact were present pursuant to Civ.R. 56."

{¶29} "A question of material fact was present as to whether Appellant's fall was even caused by snow and/or ice and the Trial Court was in error when it granted Summary Judgment to Appellee, as summary judgment is improper when questions of material fact are present pursuant to Civ.R. 56."

{¶30} "A question of material fact was present as to whether Appellee's fall was even caused by the condition of the lot, a condition which Appellee has superior knowledge of, and the Trial Court was in error when it granted Summary Judgment to Appellee, as summary judgment is improper when questions of material fact are present pursuant to Civ.R. 56."

{¶31} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

{¶32} When moving for summary judgment, a party must produce some facts that suggest a reasonable fact-finder could rule in her favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Id., citing Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot

rest on the mere allegations or denials in the pleadings. Id. at 293.

{¶33} To sustain a claim of negligence, a plaintiff must show a duty owed by defendant to a plaintiff, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. The trial court granted USA Parking summary judgment because the snow and ice on the lot was an open and obvious danger which negated the duty element. The existence of a duty is a question of law. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

{¶34} First, Allen contends that the evidence creates an issue of material fact as to whether he fell on a natural accumulation of snow or ice on USA Parking's lot. The parties do not contest that Allen was at USA Parking's parking lot as a business invitee. *Light v. Ohio University* (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611. This Court has previously discussed the duty a property owner owes to a business invitee in regards to snow and ice:

{¶35} "In Ohio, an owner of a business owes a duty to exercise reasonable care in maintaining the premises in a safe condition for the use of business invitees. *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51. The Ohio Supreme Court has repeatedly held that an owner of property is not liable for injuries to business invitees who slip and fall on natural accumulations of ice. *LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209, 210, citing *Debie v. Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St.2d 38. 'The common thread running through these cases is the principle that the owner or occupier has a right to assume that his visitors will appreciate the risk and take action to protect themselves accordingly.' *LaCourse v. Fleitz*, 210. Liability will only be found to attach under circumstances where the individual may not reasonably be expected to discover or fully appreciate the risk before him. *Id.* The Ohio Supreme Court has long recognized that the inclement weather in Ohio makes it difficult for a property owner to continually patrol the area and remedy the conditions. *Norwalk v. Tuttle* (1906), 73 Ohio St. 242, 245.

{¶36} "Ohio courts have differentiated between what is considered a natural accumulation as compared to an unnatural accumulation. A natural accumulation of ice

and/or snow has been determined to be that which accumulates as a result of an act of nature. *Porter v. Miller* (1983), 13 Ohio App.3d 93, 95, quoting *Perazzo v. Dayton Hasty-Tasty, Inc.* (1962), 119 Ohio App. 453, 458. In comparison, an unnatural accumulation is one that has been created by causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow. *Porter v. Miller*, 95. Therefore, for an accumulation to be labeled as unnatural, causes other than meteorological forces of nature must be responsible. *DeSalvo v. DeBartolo* (Dec. 16, 1998), Mahoning App. No. 96 CA 229, unreported, *3. Snow which melts and later re-freezes into ice is considered a natural accumulation of ice caused by forces of nature. *Id.* citing *Kinkey v. Jewish Hospital Assn. of Cincinnati* (1968), 16 Ohio App.2d 93, 96.

{¶37} "If a property owner voluntarily removes a natural accumulation of ice or snow, he may not create a dangerous or unnatural accumulation or be actively negligent in permitting one to exist. *Lopatkovich v. Tiffin* (1986), 28 Ohio St.3d 204, 207. In cases involving an unnatural accumulation of ice as the cause of a fall, a plaintiff must show that: (1) the defendant created or aggravated the hazard; (2) the defendant knew or should have known of the hazard; and (3) the hazardous condition was substantially more dangerous than it would have been in the natural state. *DeSalvo v. DeBartolo*, *3 citing *Porter v. Miller*, supra, 95." *Nemit v. St. Elizabeth Hosp. Medical Center* (June 26, 2001), 7th Dist. No. 99-CA-202.

{¶38} Allen argues that he fell on an unnatural accumulation of ice, claiming that this ice was "man-caused" because the water causing the ice was unnaturally impeded on USA Parking's property; the parking lot was plowed on the date of his fall, and the slope of the parking lot caused the water to run to the bottom of the hill and freeze in the area where he fell. Although Allen does not specify how USA Parking's act of plowing the lot caused an unnatural accumulation of ice, Allen is arguing that the plowing caused the snow to be piled on the top of the hill in such a way that when the temperature rose, the snow melted and ran down the slope of the hill, subsequently refreezing at the bottom. This argument is meritless based upon the evidence in the record.

{¶39} In *Stinson v. Cleveland Clinic Foundation* (1987), 37 Ohio App.3d 146, 524

N.E.2d 898, the defendant plowed snow onto the top of an incline; subsequently, temperature changes caused the snow to melt and run down to later refreeze on the adjacent sidewalk. The Eighth District found a genuine issue of material fact existed as to whether the ice was a natural accumulation. Id. at 149.

**{¶40}** Here, there is no evidence in the record that USA Parking did anything to create an unnatural accumulation of ice. The record contains conflicting evidence regarding whether the lot was even plowed at the time when Allen fell. USA Parking admitted that the lot was plowed on the date, and Hamm testified that Complete Lot Maintenance plowed the lot between 6 and 7 a.m. per their agreement. However, he could not verify when it plowed the lot on December 15, 2005. Conversely, Allen testified that it did not appear that the lot had been plowed. Even assuming that the lot had been plowed the morning before Allen fell, there is no evidence that the plowing was done improperly in a manner that would cause an unnatural ice accumulation. In fact, when asked if he saw any large piles of snow that had been created by a plow, Allen replied that he did not see any unless there were some caused naturally by wind drifts along the side of the building.

**{¶41}** Although Allen argues the design of the parking lot caused an unnatural accumulation of ice to form, the slope of a parking lot alone cannot be the cause of an unnatural accumulation. See *Mayes v. Boymel*, 12th Dist. No. CA2002-03-051, 2002-Ohio-4993, at ¶18, citing *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 239, 239 N.E.2d 37 ("[T]he fact that the parking lot is sloped does not make the natural condition of ice and snow unnatural."); *Purgert v. Lodge Keeper Group, Inc.* (May 30, 1997), 3d Dist. No. 9-97-15 ("We do not find the presence of a slope in a parking lot in and of itself creates a question of fact regarding a hazardous condition or an unnatural accumulation of snow and ice in the winter."). Thus, the ice Allen fell upon was a natural accumulation and his argument is meritless.

**{¶42}** Next, Allen asserts that a question of material fact exists as to whether USA Parking had superior knowledge of the cause of his injuries. Specifically, he asserts that USA Parking knew of the parking lot's design and had superior knowledge as to the

freeze-thaw cycle causing water to run down the slope and freeze at the bottom. Further, he notes that no warning signs were posted on the parking lot regarding its condition.

**{¶43}** If a property owner is shown to have either actual or implied notice that a natural accumulation of snow or ice on the property has created "a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area," there is proof of negligence. *Debie*, supra, at paragraph one of the syllabus. See also *LaCourse*, supra, at 210.

**{¶44}** Allen does not offer any evidence of USA Parking's superior knowledge of the danger beyond arguing that it knew its parking lot was sloped and knew of the possibility that water runoff could refreeze at the bottom of the lot. However, Allen could also view the parking lot and see that it was sloped. He testified that he had parked in this lot several times before. As the trial court noted, he had lived through many Ohio winters, and he would be aware of the possibility of snow melting and refreezing due to rising and falling temperatures. See *Burckholter v. Dentistry For You*, 3d Dist. No. 10-08-21, 2009-Ohio-1654, at ¶21.

**{¶45}** Moreover, Allen's deposition testimony reveals that he was aware of the danger of the slippery lot. He testified that the lot was "quite naturally [] slippery" and stated that prior to falling, he had already slipped once and was being cautious. This testimony supports the conclusion that the danger was open and obvious. Thus, USA Parking had no duty to post a warning regarding the condition of the parking lot. *Armstrong v. Best Buy Co., Inc.* (2003), 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶14. Accordingly, since USA Parking did not have superior knowledge of the danger and the ice was open and obvious, this argument is meritless.

**{¶46}** Finally, Allen argues an alternate theory of liability based upon loose concrete in the parking lot or a poorly maintained lot. However, Allen is relying on mere speculation to argue that questions of material fact exist regarding whether the condition of the parking lot caused his fall. As this Court has held, "[m]ere speculation or possibility is not enough to defeat a summary judgment motion." *Allstate Ins. Co. v. Sears*, 7th Dist.

No. 06 BE 10, 2007-Ohio-4977, at ¶74. Allen asserts that he testified that he could not see the pavement beneath the layer of snow and that he saw loose concrete in the lot. However, Allen testified that he saw the loose concrete in the back of the parking lot, not in the area he fell. He further testified that the snow, ice, and downhill grade were the cause of his fall. Although he could not see the pavement beneath the snow, his argument on appeal that he could have fallen on loose concrete is based on the possibility of concrete beneath the snow rather than any evidence of its presence.

{¶47} Allen further points to USA Parking's answer to his interrogatory in Exhibit D where USA Parking admitted that portions of its lot were uneven. Allen then asserts that "the presence of loose concrete in the parking lot is admitted" and later states that there is evidence that the poorly maintained lot could be the cause of his fall. However, USA Parking did not admit that there was loose concrete in the lot; rather, it stated in Exhibit D that "some parts of the paved lot may have been uneven." Even viewing this evidence in favor of Allen, it does not create a question of material fact whether a poorly maintained lot caused Allen's fall. There is no evidence in the record that the area where Allen fell was uneven. Moreover, the Ohio Supreme Court has held that, "[g]enerally, no liability exists for minor imperfections in the surface of such a parking area-those slight irregularities reasonably to be anticipated in any traveled surface." *Jeswald* at paragraph two of the syllabus. See also *Forste v. Oakview Constr., Inc.*, 12th Dist. No. CA2009-05-054, 2009-Ohio-5516, at ¶14. Thus, absent further evidence that Allen actually fell on loose concrete or that the lot was poorly maintained or contained more than minor imperfections, this argument is meritless.

{¶48} In sum, Allen fell on a natural accumulation of ice caused by thawing and refreezing of snow. The record contains no evidence that USA Parking did any act to cause an unnatural accumulation to form, and the slope of the parking lot alone cannot cause an unnatural accumulation. Allen relies on mere speculation rather than evidence to argue that he fell on loose concrete or that poor maintenance of the lot caused his fall. Finally, USA Parking did not have superior knowledge of the danger because Allen was also aware of the slope of the lot and the thaw-freeze cycle, and the danger was open

and obvious so USA Parking had no duty to warn Allen. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.