[Cite as *Painter v. Ohio State Univ. Med. Ctr.*, 2013-Ohio-5932.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BARRY PAINTER

      Plaintiff

      v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER, et al.

      Defendants

Case No. 2011-12307

Magistrate Robert Van Schoyck

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action for negligence arising from an incident in which he fell from his wheelchair on defendant's premises. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff testified that on September 18, 2007, he drove to defendants' University Hospital East to visit a friend who had been hospitalized. Plaintiff stated that he arrived there around dinnertime, parked his van in a handicapped space in a parking lot, and entered the hospital in his electric wheelchair. Plaintiff recalled that when he exited the hospital about four hours later, the sun had gone down, but the parking lot was illuminated, and there were fewer cars in the lot than when he had entered. Plaintiff explained that he proceeded at a standard rate of speed out of the building, down a ramp at the curb bordering the parking lot, and then through the lot toward his van, when he was suddenly thrown from the wheelchair and fell to the ground, fracturing his hip. Plaintiff recalled that two security officers approached and asked whether he needed medical attention, and although he declined because he suffers from paralysis in his lower body and thus did not sense any injury at the time, he did have the officers help him get back in his wheelchair.

{¶ 3} According to plaintiff, once he got back in the wheelchair, he determined that the fall had been caused by one of the front wheels of the chair becoming lodged against a metal cover plate fastened atop an electrical control box that was buried in the middle of a row of handicapped parking spaces. Plaintiff testified that he did not get a good enough look at the cover plate to estimate its dimensions, but he recalled that it was difficult to see because it was of a dark color that blended in with the color of the asphalt pavement. Plaintiff further testified that if he had seen the cover plate while traversing the parking lot, he would have avoided it.

{¶ 4} Plaintiff explained that he has used electric wheelchairs since 1975, after suffering a spinal injury that rendered him a C/5-C/6 quadriplegic, and that he had been using the wheelchair involved in this case, which was prescribed for him by a physician, since 1999. Plaintiff testified he has only fallen from a wheelchair one other time, an occasion when he was on uneven terrain and the wheelchair tipped over. He testified that he has never had a wheelchair equipped with a seatbelt, that a seatbelt has never been recommended to him, and that he does not have any balance problems or uncontrolled bodily movements.

{¶ 5} Jack Boyles testified that he has served as the Director of Facilities Services at University Hospital East since 1996, in which capacity he oversees the maintenance of the physical plant. Boyles testified that the buried electrical control box contains the controls for the parking lot lights, and that it is covered by a steel cover plate which is secured to the box with screws. (He explained that under the National Electric Code, the box must be accessible and thus cannot be covered with asphalt.) According to Boyles, the parking lot was paved with asphalt in 2005, two years before the accident. Boyles stated that as far as he knows, his department received no prior complaints about the box or cover plate.

{¶ 6} Robert Wells testified that he is a lieutenant in defendants' security department and has been employed with defendants for 14 years. According to Wells,

at the time of the incident, he and Sergeant Larry Santiago were seated in a golf cart east of the location where plaintiff fell. Wells stated that at 9:24 p.m., he observed plaintiff exit the hospital and proceed at a "quick" pace diagonally across the parking lot, and then suddenly fall out of his wheelchair. Wells recalled that he and Santiago then came to the scene and asked plaintiff if he needed medical assistance, but plaintiff just asked that they help him get back into his chair, and they obliged. Wells testified that it appeared that one of the front wheels of the wheelchair got caught against the cover plate, causing the chair to abruptly stop. According to Wells, the parking lot was well illuminated, the cover plate was clearly visible, and he had no trouble at all seeing the plate. Wells also stated that he is not aware of any prior episodes of people falling over the plate or otherwise encountering problems with it.

{¶ 7} Mark Schmeler, Ph.D., testified that he is an Assistant Professor in the Department of Rehabilitation Science and Technology at the University of Pittsburgh, and that he is a licensed occupational therapist in Pennsylvania. Dr. Schmeler testified that he regularly works with individuals with paralysis similar to plaintiff's, making recommendations as to the appropriate wheelchairs, and training them how use their wheelchairs. Dr. Schmeler stated that he reviewed both plaintiff's and Wells' deposition testimony, an incident report prepared by defendants' security department, a map of the parking lot, records of medical treatment plaintiff received after the accident, and wheelchair repair records.

{¶ 8} Dr. Schmeler testified that plaintiff's wheelchair, a rear-wheel drive Invacare Ranger Storm Series, is a model that he is familiar with and fits patients for. According to Dr. Schmeler, this model can be fitted for a seatbelt, and in general it is recommended that a patient with plaintiff's condition opt for a seatbelt, particular because such paralysis is commonly associated with a lack of stability caused by poor trunk control. He acknowledged, though, that the process of recommending and prescribing a wheelchair is tailored to the patient and involves a team of people that includes an occupational therapist, doctor, and medical supply company. He also

admitted that among the factors used to determine whether to recommend a seatbelt are any history of sliding or falling out of wheelchairs, uncontrolled movement, ability to maintain good seating posture, inability to relax in the seating surface and using legs for self propulsion, and, that he does not know plaintiff's medical history. In any event, Dr. Schmeler opined that if plaintiff had been wearing a seatbelt, it probably would have prevented him from coming out of the chair.

{¶ 9} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8. Under Ohio law, the duty owed by an owner or occupier of premises generally depends on whether the injured person is an invitee, licensee, or trespasser. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). "A visitor of a patient in a hospital is an invitee * * *." *Stinson v. Cleveland Clinic Found.*, 37 Ohio App.3d 146, 148 (8th Dist.1987); *see also Dodson v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 03AP-54, 2003-Ohio-4410, ¶ 8. An owner or occupier of premises owes its invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong* at ¶ 5. "A latent danger is 'a danger which is hidden, concealed and not discoverable by ordinary inspection, that is, not appearing on the face of a thing and not discernible by examination.'" *McCoy v. Kroger Co.*, 10th Dist. No. 05AP-7, 2005-Ohio-6965, ¶ 8, quoting *Potts v. David L. Smith Constr. Co., Inc.*, 23 Ohio App.2d 144, 148 (12th Dist.1970).

{¶ 10} "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong* at syllabus. "Open and obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection." *Early v. Damon's Restaurant*, 10th Dist. No. 05AP-1342, 2006-Ohio-3311,

¶ 8. "'[T]he dangerous condition at issue does not actually have to be observed by the plaintiff in order for it to be an "open and obvious" condition under the law. Rather, the determinative issue is whether the condition is observable.' *Lydic v. Lowe's Cos., Inc.*, 10th Dist. No. 01AP-1432, 2002-Ohio-5001, ¶ 10. Put another way, the crucial inquiry is whether an invitee exercising ordinary care under the circumstances would have seen and been able to guard himself against the condition." *McConnell v. Margello*, 10th Dist. No. 06AP-1235, 2007-Ohio-4860, ¶ 10.

{¶ 11} Upon review of the evidence adduced at trial, the court finds that on September 18, 2007, at approximately 9:24 p.m., as plaintiff traversed the parking lot on defendants' premises, one of the front wheels of his wheelchair became lodged against the steel cover plate of a buried electrical control box, and, as a result, plaintiff fell out of the wheelchair and sustained injuries. Based on the totality of the evidence, including Wells' testimony that the cover plate was plainly visible and plaintiff's testimony that he had no trouble seeing the plate after getting back in his wheelchair, the court finds that the cover plate was discernable to an ordinary person paying attention to where he or she was going. The court finds that the parking lot was well illuminated and contained relatively few cars, that the cover plate was not hidden or concealed from view, that the evidence does not establish the existence of circumstances that would have diverted plaintiff's attention or otherwise prevented him from seeing where he was going, and that by plaintiff's own admission, if he had seen the plate he would have avoided it. Thus, while not unsympathetic for plaintiff's injuries, the court concludes that the cover plate was an open and obvious condition, that defendants therefore did not owe a duty to protect plaintiff from the cover plate, and that in the absence of such duty, defendants cannot be liable to plaintiff for his claim of negligence.

{¶ 12} Based upon the foregoing, the court finds that plaintiff has failed to prove his claim of negligence by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendants.

{¶ 13} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

cc:

Amy S. Brown                          Curtis M. Fifner
Daniel R. Forsythe                    495 South High Street, Suite 300
Randall W. Knutti                     Columbus, Ohio 43215
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

001
Filed July 19, 2013
Sent to S.C. Reporter April 30, 2014