143 So.2d 355 (1962)
NORTH BROWARD HOSPITAL DISTRICT, a Body Corporate and Politic of the State of Florida, and the Board of Commissioners of Said District, Appellants,
v.
Minnie M. ADAMS and Carmon L. Adams, Her Husband, Appellees.
No. 2030.
District Court of Appeal of Florida. Second District.
July 11, 1962.
Rehearing Denied August 6, 1962.
James J. Linus, of McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellants.
Richard R. Kirsch, of Davis, Kirsch & Spellacy, and John M. McCants, Fort Lauderdale, for appellees.
SMITH, Judge.
The appellees, as plaintiffs, sued the appellants, as defendants, alleging injuries of the wife, suffered as a result of negligence of the defendants. Judgment was entered on a jury verdict in plaintiffs' favor.
*356 The defendant is a special tax district, created by legislative act, operating a public hospital, and maintained in part by the levy of taxes. The plaintiff was entering the hospital for the purpose of visiting a friend, who was a patient at the hospital. While on the premises of the hospital and walking toward one of the entrances, upon a walkway or driveway made of black asphalt surface, and in the nighttime, she stepped into a hole in the surface of the driveway, fell and was injured.
It is first necessary to determine the legal status of the plaintiff while on the premises of the hospital in order to determine the duty owed by the hospital to her. Was the plaintiff an invitee or a licensee?
The general principles to be considered in determining the duty owed by the owner or occupant of the premises to various classes of persons have been considered by the courts of Florida, and these cases, as hereinafter analysed, are persuasive toward determination of the question as to the legal status of a person on the premises of a hospital for the purposes of visiting a patient. The specific question has not been heretofore decided in Florida.
In a suit involving a person attending a church, the court held, in effect, that a church is not a business and that the benefit to be derived from attending religious services is to the worshiper and that even in donating to the church's cause, the donor is receiving rather than giving and, therefore, a person upon the premises of a church is a licensee, which is broadly defined as a person who enters upon the property of another for his own convenience, pleasure, or benefit. The duty owed a licensee is to refrain from wanton negligence or wilful misconduct which would injure the licensee or to refrain from intentionally exposing the licensee to danger. There may be a further duty to the licensee to warn him of a defect or a condition known to the owner or occupant to be dangerous when such danger is not open to ordinary observation by the licensee. An invitee is normally considered to be one who enters upon the premises of another for purposes connected with the business of the owner or occupant of the premises. The owner or occupant owes an invitee the duty of keeping the premises in a reasonably safe condition and to guard against subjecting the invitee to dangers known to the owner or occupant or which might reasonably have been foreseen by the owner or occupant. In determining the question, the general test is whether the injured person had, at the time of the injury, business relations with the owner of the premises which would render his presence on the premises of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of a relationship which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee. McNulty v. Hurley, Fla. 1957, 97 So.2d 185.
A party guest of a tenant who tripped over a hole in the host's lawn, and a social caller on a lessee of an apartment have, in effect, been held to be licensees. Goldberg v. Straus, Fla. 1950, 45 So.2d 883; Tomei v. Center, Fla.App. 1959, 116 So.2d 251.
The defendants contend that it was created and is maintained for the benefit of the citizens who reside in its district; that its sole purpose is to provide service; that it does not invite people to come into the hospital; that if no one ever came to its hospital, it would make no particular difference to the defendant for the reason that if the necessity for the hospital ceased, then the necessity for levying taxes to maintain it would diminish, and if there was no need for hospital services, there would be no need for the hospital district; and, that the plaintiff's visit to her friend, who was a patient in the hospital, did not constitute any convenience, pleasure or benefit to the hospital. At first blush this argument appears entirely rational and extremely persuasive. However, the defendants *357 cite no authority to sustain this logic. Our independent research has failed to produce any authority for the defendants' contentions, with the exception of the case of Field v. Sisters of Mercy of Colorado, 1952, 126 Colo. 1, 245 P.2d 1167. With the exception of the Colorado decision, all of the remaining American jurisdictions uniformly hold that a visitor to a patient in a hospital occupies the legal status of a business invitee. These decisions have made no distinction, in applying this principle, where the hospital was an instrumentality or agency of a state, county, city or the federal government. Desmond v. The State of New York, 1956, 4 Misc.2d 6, 158 N.Y.S.2d 146; Hospital of St. Vincent of Paul v. Thompson, 1914, 116 Va. 101, 81 S.E. 13, 51 L.R.A.,N.S., 1025; Cohen v. General Hospital Soc. of Connecticut, 1931, 113 Conn. 188, 154 A. 435; Sisters of Charity of Cincinnati v. Duvelius, 1930, 123 Ohio St. 52, 173 N.E. 737; Mattson v. St. Luke's Hospital of St. Paul, 1958, 252 Minn. 230, 89 N.W.2d 743, 71 A.L.R.2d 422; and Woodward v. United States, D.C., 1960, 184 F. Supp. 625. The rationale is well expressed in Hamlet v. Troxler, 4 Cir., 1956, 235 F.2d 335:
"It is a matter of common knowledge that all hospitals expect patients to have visitors, the number, duration and frequency of their visits depending upon the severity of the patient's illness. Certainly, near relatives, such as plaintiff in this case, have an implied invitation to visit. Such visits are for the mutual advantage of the patient, the visitor and the hospital. It is desirable from the standpoint of the hospital to permit, at the proper times and under proper conditions, visits to patients by relatives and friends. No one would patronize a hospital which did not permit relatives and friends to visit patients at proper times. * * *"
In accord with this great preponderance of authorities, we hold that the plaintiff's status while on the premises of the defendant, was that of an invitee and, therefore, the defendant owed to the plaintiff the duty to be accorded to an invitee.
The specific acts of negligence alleged were that the defendant negligently (a) permitted an entrance way to become in a hazardous and unsafe condition for use by the plaintiff and the general public; (b) failed to repair said entrance way after defendant knew, or in the exercise of reasonable care, should have known that said entrance way was in a hazardous and unsafe condition; (c) failed to maintain the entrance way in a reasonable and careful manner and condition so as to make said entrance way reasonably safe for the use by the general public; and (d) failed to warn the plaintiff that said entrance way was in a dangerous and unsafe condition.
The witnesses' description of the hole in the walkway, together with the photographs received in evidence, were sufficient facts from which the jury could reasonably infer that the hospital knew, or should have known of the defect in its walkway. The plaintiff's testimony was to the effect that the entrance way was paved with black macadam and led to doors which entered into the south wing of the hospital; that there was a light above the doors, and as she proceeded upon the walkway, she stepped into a "pot" hole about two feet in diameter and about two and one-half to three inches deep; and, that she did not see the "pot" hole until after she had fallen. Whether or not the plaintiff exercised ordinary care for her own safety under these particular facts and circumstances became a jury question. Delany v. Breeding's Homestead Drug Co., Fla., 1957, 93 So.2d 116; and Alessi v. Farkas, Fla.App. 1960, 118 So.2d 658.
Affirmed.
ALLEN, Acting C.J., and STEPHENSON, GUNTER, Associate Judge, concur.