LAFFERTY, APPELLEE, *v.* BENGE, APPELLANT.

[Cite as Lafferty v. Benge (1971), 31 Ohio App. 2d 235.]

(No. 368—Decided March 22, 1971.)

*Messrs. Cramer & Turkelson,* for appellee.
*Messrs. Holzfaster, Hoefling & Cecil,* for appellant.

HILDEBRANT, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Warren County.

Lafferty, the plaintiff and appellee herein, agreed to construct a house for Benge, the defendant and appellant herein. On May 20, 1967, Lafferty was grading the real estate with a tractor to which a blade was attached. In

order to remove the stump of a tree, Lafferty stood between the blade and the stump intending to attach a chain to the stump. Benge was then seated behind the controls of the tractor, and the tractor moved so as to pin Lafferty's legs between the blade and stump.

In his amended petition, Lafferty claims that as a result of Benge's negligence he sustained "contusions and abrasions to both knees and legs; severe soft tissue injuries to the lower legs causing irreparable damage to his circulatory and nervous system in said area."

Upon trial, Lafferty called as a witness the physician, an orthopedic surgeon, who examined and treated him initially some five weeks after the incident. Although reference is made in the testimony to examinations and treatment by other physicians, none were called as witnesses.

The expert who testified stated the following upon direct examination:

"A. Well, the diagnosis was a non-specific inflammation which followed injury. From what I could determine this was a contusion or deep bruising to the tissues about the knee and in the, what I thought was the healing process, this set up an irritation. It is a process that lay people are more familiar with in the form of bursitis or tendonitis because of this injury and also from restricted activity. It was my feeling the muscles had become weak, also, that support the knee, primarily the thigh muscles.

"Q. Was there any evidence of any injuries to his knees, to the eye?

"A. Not at the time I saw him.

"Q. Was there any evidence of any previous laceration?

"A. I do not have reported here and don't remember that far back."

Subsequently, the physician testified:

"Q. Were these injuries associated with both legs?

"A. Yes.

"Q. Does this involve circulatory problems too?

"A. There is no clearcut evidence he had any major impairment to the circulation."

Upon cross-examination, he answered these questions:

"Q. You indicated on direct examination that Mr. Lafferty said to you he had a sensation of his knee going out of place, I believe was the word you used. You found no evidence, did you, that the knee was out of place?

"A. No.

"Q. In fact you found no evidence, did you, that there was any disability to either the knee or the ankle joint or the foot, is that correct?

"A. There were no objective findings that would indicate any loss of function that I found.

"Q. And that would apply to both left and right legs?

"A. Yes.

"Q. And there were no complaints made to you by Mr. Lafferty of any injury other than to the legs, were there?

"A. No."

In the course of later cross-examination, the physician stated:

"Q. Is it fair to say then, Doctor, that what you found was a deep bruise or contusion to what we would call the fleshy part of the leg or the soft tissue?

"A. No, it isn't, quite, because what I found I interpreted as a residual or inflammation that I presumed resulted from a deep bruise. When I saw him as I stated, the evidence of a bruising was gone. I mean there was the tenderness in essence was what I interpreted as a healing bruise; the process of the body's attempt to restore tissue to what it normally was.

"Q. You did not have any occasion of course to examine Mr. Lafferty before the accident on May 20?

"A. No.

"Q. You had never treated Mr. Lafferty at any time prior to June 27, 1967?

"A. No, I had not.

"Q. So that except for what he might have told you you have no awareness of what his past medical history was?

"A. That is true."

It is from the judgment, entered upon a verdict awarding Lafferty damages in the sum of $20,000 that this appeal is taken.

Defendant makes six assignments of error, the first of which is that the trial court erred to the prejudice of defendant-appellant in refusing to withdraw from the consideration of the jury the testimony of the expert witness.

After the trial of the case at bar was concluded, the Supreme Court of Ohio decided *Darnell* v. *Eastman* (1970), 23 Ohio St. 2d 13, the syllabus of which reads:

"Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury."

We believe that the principle of *Darnell* controls here. Nowhere does it appear that the disability of which Lafferty complained to the physician who testified was one which could be established except by a medical witness competent to express an opinion on the issue of causal connection.

In refusing, upon a timely request, to withdraw the physician's testimony from the consideration of the jury and to permit that jury to decide the issue of causal connection and damages unaided by opinion testimony based upon reasonable medical certainty, the trial court committed error prejudicial to the appellant.

In light of such conclusion, it is unnecessary to consider the other assignments of error.

The judgment of the Court of Common Pleas of Warren County is reversed and the cause remanded for a new trial.

*Judgment reversed.*

SHANNON, P. J., and HESS, J., concur.

HILDEBRANT, J. (Retired. Assigned to active duty under authority of Section 6(C), Article IV, Constitution.), sitting for YOUNG, J.