BOWINS ET AL., APPELLANTS, *v.* EUCLID GENERAL HOSPITAL ASSOCIATION ET AL., APPELLEES.

(No. 47462—Decided July 30, 1984.)

*James K. Clower,* for appellants.
*John V. Jackson II,* for appellees.

NAHRA, J. On December 29, 1976, appellant, Clara Ellen Bowins, went to Euclid General Hospital to visit her husband, a patient therein since December 24, 1976. She visited him every day and testified that the condition of the sidewalks to the front entrance of the hospital were similar each day. The sidewalks were cleared so that snow was piled along the sides of the walkways and in the driveway gutters. As appellant stepped from the driveway onto the sidewalk over a mound of snow, her foot slipped on the ice on the sidewalk and then down the curb, causing her to fall and sustain injuries.

Appellant testified that the area was well lit and that she was aware of the weather conditions and the sloped curbs at the hospital. She was aware of the difference in height between the driveway and the sidewalk and that she had to step up onto the sidewalk from the driveway. She saw and was aware of the rounded portion of the curb. Appellant had been to Euclid General Hospital and

had used the front entrance some fifty times over the past twenty years.

Appellant brought suit against Euclid General Hospital and Euclid General Hospital Association on December 28, 1978. The association was dismissed as a co-defendant, and a jury verdict was returned for the hospital on June 27, 1983. Appellant moved for a new trial which was denied on August 15, 1983. Appellant timely appealed assigning three errors.

## I

Appellant's first two assignments of error are that:

"I. The trial court erred in finding as a matter of law that the plaintiff-appellant, Clara Ellen Bowins, was a licensee; and

"II. The trial court erred in instructing the jury that the defendant-appellee had only the duty not to cause injury to plaintiff-appellant by its wilful and wanton misconduct."

Appellant argues that in other jurisdictions a visitor to a hospital is an invitee thus imposing a higher duty of care upon the hospital. Since the issue has not been addressed in Ohio, appellant urges that we assign the higher status to a hospital patient's visitor.

In Ohio, "an 'invitee' means a business visitor, that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest." *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308 [46 O.O. 177], paragraph one of the syllabus; *Durst* v. *Van Gundy* (1982), 8 Ohio App. 3d 72. "* * * [A] 'licensee' is one who stands in no contractual relationship to the owner or occupier of premises, but is permitted or tolerated thereon, expressly, impliedly or inferentially, merely for his own interest, convenience or pleasure or for that of a third person." *Keesecker* v. *G. M. McKelvey Co.* (1943), 141 Ohio St. 162, 166 [25 O.O. 266]; *Garrard* v. *McComas* (1982), 5 Ohio App. 3d 179.

Applying the status tests of Ohio, we hold that a visitor of a patient in a hospital is an invitee. Accord *North Broward Hosp. Dist.* v. *Adams* (Fla. App. 1962), 143 So. 2d 355; *McCann* v. *Bethesda Hosp.* (1979), 80 Ill. App. 3d 544; *Himel* v. *Ryder* (La. App. 1962), 146 So. 2d 209; *Mattson* v. *St. Luke's Hosp.* (1958), 252 Minn. 230, 89 N.W. 2d 743; *Lesyk* v. *Park Ave. Hosp.* (1968), 29 App. Div. 2d 1043, 289 N.Y. Supp. 2d 873; *Stroud* v. *N.C. Memorial Hosp.* (1972), 15 N.C. App. 592, 190 S.E. 2d 392; *Hospital of St. Vincent of Paul* v. *Thompson* (1914), 116 Va. 101, 81 S.E. 13. A hospital that provides health care and services has a beneficial interest in the welfare of its patients. Visitors play an integral role in the recuperation of patients and are, therefore, important to the operation of a hospital. Further, hospitals maintain gift and flower shops, as well as parking lots, for visitors. We are unaware of any hospital which prohibits visitors. In fact, the Fourth District Court of Appeals, interpreting North Carolina and Virginia law, stated that:

"It is a matter of common knowledge that all hospitals expect patients to have visitors, the number, duration and frequency of their visits depending upon the severity of the patient's illness. Certainly, near relatives, such as plaintiff in this case, have an implied invitation to visit. Such visits are for the mutual advantage of the patient, the visitor and the hospital. It is desirable from the standpoint of the hospital to permit, at the proper times and under proper conditions, visits to patients by relatives and friends. No one would patronize a hospital which did not permit relatives and friends to visit patients at proper times." *Hamlet* v. *Troxler* (C.A. 4, 1956), 235 F.2d 335, 337.

In essence, affording patients visitors is simply part of the business of a hospital.

An invitee is owed a higher duty of

care than a licensee. An invitee is owed a duty of reasonable care, *Durst* v. *Van Gundy, supra,* at 74, while a licensee is owed a duty not to be injured by willful or wanton misconduct, *Salemi* v. *Duffy Constr. Corp.* (1965), 3 Ohio St. 2d 169 [32 O.O.2d 171]. As a general rule, a hospital owes no duty to a visitor using its parking lot to remove natural accumulations of ice and snow from its parking area. *Kinkey* v. *Jewish Hospital Assn.* (1968), 16 Ohio App. 2d 93 [45 O.O.2d 267]. Such conditions are ordinarily so obvious that an owner or occupier of premises may reasonably expect that an invitee will discover them and protect himself against them. *Sidle* v. *Humphrey* (1968), 13 Ohio St. 2d 45 [42 O.O.2d 96], paragraph two of the syllabus; *Kinkey* v. *Jewish Hospital, supra,* at 95-96. Only when ice and snow, which the owner or occupier knows or should know, have created a condition substantially more dangerous to an invitee than he could reasonably anticipate will the owner's failure to remove the ice and snow constitute negligence. *Mikula* v. *Slavin Tailors* (1970), 24 Ohio St. 2d 48 [53 O.O.2d 40], paragraph five of the syllabus; *Longenberger* v. *Collins Food* (1977), 52 Ohio App. 2d 105 [6 O.O.3d 69]. Even then, if the owner or occupier and the invitee are equally aware of the dangerous condition and the invitee voluntarily exposes himself to the hazard, the owner or occupier will not be liable. See *DeAmiches* v. *Popczun* (1973), 35 Ohio St. 2d 180 [64 O.O.2d 106], paragraph two of the syllabus. An invitee is required to exercise some degree of care for his own safety. *Hartman* v. *DiLello* (1959), 109 Ohio App. 387.

The trial court ruled in error as a matter of law that appellant was a licensee. Since the corresponding duty owed an invitee is much higher than the duty owed a licensee, we conclude that the court's erroneous ruling requires a reversal and a new trial. Whether the snow and ice in this case created a substantially more dangerous condition than that which normally exists with ice and snow, and whether appellee was negligent in removing the ice and snow are questions for the jury to determine under the appropriate standards. Accordingly, appellant's first and second assignments of error are sustained.

II

Appellant's last assignment of error is that:

"III. The trial court erred in excluding the testimony of an expert witness as to the need for an appropriate means of removal of snow from the subject sidewalk."

Expert testimony is not required unless the subject of inquiry is outside the common, ordinary and general experience of lay persons. *Lafferty* v. *Benge* (1971), 31 Ohio App. 2d 235 [60 O.O.2d 379]; see Evid. R. 702. We conclude that the matters disputed herein are of the type which usually require the introduction of expert testimony. Cf. *State* v. *Williams* (1983), 4 Ohio St. 3d 53 (spectrographic voice analysis); *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127 [75 O.O.2d 184] (medical malpractice); *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77 [40 O.O.2d 87] (art of welding); *In re Estate of Seelig* (1981), 2 Ohio App. 3d 223 (mental capacity and competency to make a will). While the methods and quality of snow removal of small areas are matters well within the general competence of a jury in this vicinity, the techniques for removing snow and ice from a large commercial parking area are not. Therefore, expert testimony which aids the jury in understanding the evidence or in determining the facts in issue should not be excluded.

However, the exclusion of this particular expert's testimony was harmless error. The proffered testimony discussed the danger of a *hidden* sloped

32

curb caused by negligent snow removal. In this case, however, appellant testified that she saw the rounded portion of the curb but that she slipped on ice on the flat sidewalk. Whether the curb was obscured by snow negligently deposited there is irrelevant since appellant saw the rounded curb and did not fall because the curb was hidden from her view by ice or snow. The proffered testimony did not discuss snow removal techniques in general. Accordingly, this assignment of error is overruled.

The judgment of the trial court is reversed and the case is hereby remanded for a new trial.

*Judgment reversed and cause remanded.*

JACKSON, P.J., concurs.

PRYATEL, J., concurs in judgment only.

PRYATEL, J., concurring in judgment only. I concur in the judgment of the court, but do so on different grounds on the second assignment of error regarding the admissibility of expert testimony on general snow removal techniques. The distinction drawn by the majority between small areas and large commercial areas is unnecessary since the same principles are applied in removing the snow regardless of the size of the lot. Furthermore, the area in question in the instant case was only that near the curb where appellant fell and not the entire lot.

Moreover, as the majority notes, the proffer of the proposed expert's testimony did not address general snow removal techniques. Hence, I would overrule this assignment of error based on the failure of the proffer to address the question of general snow removal techniques rather than treat it as harmless error.