DODSON

v.

OHIO STATE UNIVERSITY MEDICAL CENTER.

2002-Ohio-7413.]

Court of Claims of Ohio.

No. 2000–12998.

Decided Dec. 20, 2002.

Stanley B. Dritz, for plaintiff.

Betty D. Montgomery, Attorney General, Stephanie D. Pestello–Sharf and Velda K. Hofacker Carr, Assistant Attorneys General, for defendant.

FRED J. SHOEMAKER, Judge.

{¶ 1} This case was tried to the court on the issue of liability. Plaintiff asserts that she sustained personal injury on defendant's premises as a result of defendant's negligence.

{¶ 2} On January 16, 1999, plaintiff and her daughter, Robin Milam, went to visit another of plaintiff's daughters, Brenda Case, who was a patient at The Ohio State University Medical Center ("OSUMC"). Case's 50th birthday party had been planned for that morning in the atrium at Rhodes Hall.

{¶ 3} Plaintiff and Milam took an elevator to the fifth floor of Rhodes Hall. Milam stepped out of the elevator first and began to walk down the hallway. As plaintiff exited the elevator, she slipped on some coffee that had spilled on the floor, fell, and fractured her left hip. Neither Milam nor plaintiff saw the coffee before the fall. Plaintiff testified that she was not looking directly down when she exited the elevator. Plaintiff was transported to defendant's emergency department for medical treatment.

{¶ 4} In order to prevail upon her claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed her a duty, that it breached that duty, and that the breach proximately caused her injuries. *Stroth-*

*er v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 423 N.E.2d 467. The status of a person injured on an owner's premises determines the scope and extent of the owner's duty to the injured person. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 662 N.E.2d 287. In Ohio, an owner's duty of care depends on whether the injured person is an invitee, a licensee, or a trespasser. Id.

{¶ 5} A person who enters an owner's premises, with permission or acquiescence, for personal benefit, is a licensee. *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 502 N.E.2d 611. A person who enters an owner's premises, with permission, for some purpose that is beneficial to the owner, is an invitee. Id. An owner has a duty to exercise ordinary care to protect an invitee. Id. In contrast, an owner owes a licensee a duty only to refrain from wantonly or willfully causing injury. Id.

{¶ 6} Defendant asserts that plaintiff was a licensee at the time of the incident, pursuant to the rationale set forth in *Heffern v. Univ. of Cincinnati Hosp.* (2001), 142 Ohio App.3d 44, 753 N.E.2d 951. However, the court finds that the facts in *Heffern* are distinguishable from the facts in this case. Moreover, visitors of a patient in a hospital have been afforded the status of invitees, although such visitors do not necessarily provide a direct, tangible benefit to the hospital. See *Bowins v. Euclid Gen. Hosp. Assn.* (1984), 20 Ohio App.3d 29, 20 OBR 31, 484 N.E.2d 203; *Rapisarda v. Chagrin Valley Athletic Club, Inc.* (Dec. 14, 2001), Geauga App. No. 2001–G–2332, 2001 WL 1602750. "In essence, affording patients visitors is simply part of the business of a hospital." *Bowins,* supra, at 30, 20 OBR 31, 484 N.E.2d 203. Therefore, the court finds that plaintiff should be afforded the legal status of a business invitee.

{¶ 7} Business invitees are owed a duty of ordinary care by owners in maintaining their places of business in a reasonably safe condition so that visitors are not exposed unnecessarily and unreasonably to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. In order for a business invitee to recover in a negligence action based on a slip-and-fall accident it must be established:

{¶ 8} "1. That the defendant through its officers or employees was responsible for the hazard complained of; or

{¶ 9} "2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

{¶ 10} "3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." *Evans v. Armstrong Group* (Sept.

23, 1999), Franklin App. No. 99AP–17, 1999 WL 739546, quoting, *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 589, 26 O.O. 161, 49 N.E.2d 925.

{¶ 11} Cindy Detty testified that she was at Rhodes Hall on the day of the incident because her sister was scheduled for surgery; that she saw a brown liquid on the fifth floor when she exited the elevator; that she stepped to the side of the liquid and told her mother to watch out for it; that she and her mother went to the waiting room after they had exited the elevators; that no one was working at the desk near the waiting room; and that approximately 10 to 15 minutes after walking past the liquid, she heard a scream.

{¶ 12} Ruth Detty testified that as the elevator doors opened, her daughter Cindy grabbed her arm and said, "Don't step in the coffee." She further testified that she did not notice the spill until her daughter had alerted her to it.

{¶ 13} Timothy Trudo was a security officer at OSUMC at the time of the incident. His duties included patrolling the buildings and dispatching. He testified that on January 16, 1999, he received a call at 10:31 a.m. because a visitor had fallen on spilled coffee; that he arrived at the scene one minute later and saw what he estimated to be approximately one cup of coffee on the floor; that his routine was to make regular rounds through each building approximately once every four hours; and that if he had passed by the spill during his patrol, he would have either cleaned it up or called housekeeping.

{¶ 14} Spero Vasila has been employed by OSUMC for 19 years and was the assistant director of security at the time of the incident. He testified that the normal procedure was for security to patrol the buildings at least twice during each eight-hour shift and that if a security officer discovers a spill, he is to report it to the dispatcher, and it is either cleaned up or reported to housekeeping. According to Vasila, there was no report made regarding the spill before plaintiff's fall.

{¶ 15} The court finds that plaintiff has failed to prove by a preponderance of the evidence that defendant either caused the spill or had actual notice of the spill before the incident. The court further finds that although plaintiff has proven that the hazard existed for at least 10 to 15 minutes, she has not proven that it existed for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to any want of ordinary care. The court concludes that defendant's maintenance plan of patrolling the buildings every four hours was reasonable and did not fall below the standard of ordinary care. Accordingly, judgment shall be rendered in favor of defendant.

Judgment for defendant.

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.