**REVERSE and REMAND; and Opinion Filed December 6, 2024**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-23-00606-CV**
_____

**BAYLOR SCOTT & WHITE HEALTH AND SCOTT & WHITE HEALTHCARE, Appellants**
**V.**
**JERRY BOSTICK, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-18052**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Smith, and Garcia
Opinion by Justice Smith

Appellants Baylor Scott & White Health and Scott & White Healthcare (collectively, BSW) appeal the trial court's judgment in favor of appellee Jerry Bostick. In four issues, BSW asserts that errors in the jury charge resulted in an improper judgment and the trial court erred in denying its motion to transfer venue. For the following reasons, we reverse the trial court's judgment and remand for a new trial on Bostick's premises liability claim against BSW.

## BACKGROUND

Bostick brought this suit to recover for injuries he sustained from a fall at a BSW hospital in Marble Falls, Texas. He filed a petition in Travis County, asserting claims against Baylor Scott & White Health and several other defendants.[1] Bostick alleged that venue was proper in Travis County because at least one defendant had a principal office in the county.

Baylor Scott & White Health filed a motion to transfer venue and answer to the petition. It asserted that Bostick had alleged no facts to show the events or omissions giving rise to any claim occurred in Travis County and that none of the defendants resided, or had their principal offices, in Travis County.[2] Because Travis County was not a proper venue for the suit, Baylor Scott & White Health requested that the trial court transfer the suit to Burnet County, where all of the events or omissions allegedly occurred and Bostick resided.

Bostick did not respond. Instead, he nonsuited and refiled his suit in Dallas County. Bostick's new petition added Scott & White Healthcare as a defendant,

---

[1] Bostick also sued Overhead Door Corporation, Door Control Services, LLC, Door Services, Inc., DG's DCS Holdings, Inc., Horton Automatics, Inc., Horton Automatic Door Corporation, and Door Services Corporation. Ultimately, the suit was tried against only BSW, and Bostick's claims against the other defendants are not part of this appeal.

[2] According to the motion, Baylor Scott & White Health's principal office was in Bell County, Overhead Door Corporation's principal office was in Denton County, Door Control Services, LLC's principal office was in Van Zandt County, Door Services, Inc. appeared to be a forfeited entity that previously had its principal office in Williamson County, DG's DCS Holdings, Inc. appeared to be a dissolved company that previously had its principal office in Van Zandt County, Horton Automatics appeared to be a dissolved company that previously had its principal office in Nueces County, and Horton Automatic Door Corporation was the assumed name for Door Services Corporation.

omitted one of the other defendants, and alleged that at least one defendant had a principal office in Dallas County. BSW moved to transfer venue to Burnet County, and the trial court denied the motion.

The case was tried to a jury. A number of witnesses testified. During Bostick's testimony, he explained that, on November 10, 2017, he noticed an ambulance at his neighbor Charley Selman's house. Selman had fallen and was being transported to the hospital. Bostick, following the ambulance, drove Selman's wife to the hospital. They checked in at a reception booth, and a nurse led then to Selman in the treatment area through two sets of automatic doors.

Because the hospital allowed only two visitors at a time in its treatment area, Bostick headed back to the reception area so Selman's pastor could be with Selman. Bostick told the hospital employee in the reception booth that he needed to return to the lobby, and she opened a set of doors for him. He assumed that she pushed a button to activate the doors. Bostick raised his hand to get the pastor's attention, and one door started to close against him. He pulled the door "back a little tug," but it continued to move toward him, hit him on his left side, and knocked him to the floor. Bostick suffered a broken hip.

BSW moved for a directed verdict, challenging, among other things, the sufficiency of the evidence that Bostick was an invitee of the hospital at the time of the incident. The trial court denied BSW's motion.

During the charge conference, Bostick requested that the trial court submit the Texas Pattern Jury Charge's disjunctive jury question on whether he was an invitee or a licensee on BSW's premises when he became injured.[3]  BSW objected to the proposed question, asserting that Bostick had not pleaded he was a licensee, there was no evidence that would allow for the submission of Bostick's status as an invitee, and the definition of invitee misstated the law.  The trial court overruled BSW's objections, rejected its alternative definition of invitee, and submitted Bostick's requested question to the jury.

Finding that Bostick was an invitee and BSW was ninety-four percent responsible for causing or contributing to his injuries, the jury returned a verdict in Bostick's favor for $2,470,000.  The trial court signed a final judgment consistent with the verdict.  BSW filed a motion to disregard the jury findings and for judgment notwithstanding the verdict and, alternatively, motion for new trial.  The motion was overruled by operation of law, and this appeal followed.

### INVITEE STATUS

In its first three issues, BSW contends that the trial court erred in overruling its objections to the jury charge's disjunctive liability question, including the definition of an invitee, and the erroneous charge cause the rendition of an improper judgment.

---

[3] *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice, Premises & Products*, PJC 66.7 (2018).

## I.  Standard of Review

A trial court "shall submit the questions, instructions, and definitions . . . which are raised by the written pleadings and the evidence."  *See* TEX. R. CIV. P. 278; *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009).  A question or instruction cannot be submitted to the jury unless it has been properly raised by the pleadings and the evidence.  *In re Est. of Poe*, 648 S.W.3d 277, 285 (Tex. 2022) (citing *Hawley*, 284 S.W.3d at 855).

"A trial court has broad discretion in constructing the charge, so long as it is legally correct."  *Emerson Elec. Co. v. Johnson*, 627 S.W.3d 197, 208 (Tex. 2021).  We review a trial court's jury charge rulings for an abuse of discretion, *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 727–28 (Tex. 2016), but whether a definition in the charge misstates the law is a legal question that we review de novo.  *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 408 (Tex. 2016).

We will not reverse a judgment for charge error unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal.  TEX. R. APP. P. 44.1(a)(1).  "Charge error is generally considered harmful if it relates to a contested, critical issue."  *See Hawley*, 284 S.W.3d at 856.

## II.  Applicable Law

A person injured on another's property may sue a property owner under a premises-liability theory for injuries sustained as the result of an unreasonably

–5–

dangerous condition on the owner's premises.[4]  *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).  Premises liability is a special form of negligence in which the duty owed to the plaintiff depends on the plaintiff's status on the premises at the time of the injury-causing event.  *See Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010).  A premises-liability plaintiff usually is classified as either a trespasser, licensee, or invitee.[5]  *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999).  "Generally, a premises-liability plaintiff's status is a question of law, though it can be a question for the jury when facts relevant to the legal standard are in dispute."  *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021).

An invitee is one who enters an owner's property "with the owner's knowledge and for the mutual benefit of both."  *Id.*  An owner owes an invitee the duty "to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner . . . knew or by the exercise of reasonable care would discover."  *Id.*  (quoting *Fair*, 310 S.W.3d at 412).  A licensee is one who enters on another's premises "merely by permission, express or implied, and not by any express or implied invitation."  *Id.*  The duty owed a licensee is the lesser duty to "use ordinary care either to warn a licensee of,

---

[4] Liability for injury on business premises also may be based on a negligent activity theory. *See Keetch*, 845 S.W.2d at 264.  Bostick asserted negligence based on both premises liability and negligent activity. BSW moved for, and the trial court granted, a directed verdict on his negligent activity theory.

[5] No one has argued that Bostick was a trespasser.

–6–

or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Id.*

### III. Analysis

### A. Definition of Invitee

In its second issue, BSW contends that the trial court erred in overruling its objection to the definition of invitee proposed by Bostick and refusing to submit the definition it proposed. Based on this Court's precedent, we agree.

Following the Texas Pattern Jury Charge, the trial court charged the jury:

> An **invitee** is a person who is on the premises at the express or implied invitation of the possessor of the premises and who has entered thereon either as a member of the public for a purpose for which the premises are held open to the public or for a purpose connected with the business of the possessor that does or may result in their mutual economic benefit.

*See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice, Premises & Products*, PJC 66.7 (2018). The definition is aligned with the Restatement (Second) of Torts. RESTATEMENT (SECOND) OF TORTS § 332 (1965). Under the Restatement, a visitor is an invitee if he is either a public invitee, defined as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public", or a business visitor, defined as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Porter*, 622 S.W.3d at 830 n.31 (quoting RESTATEMENT (SECOND) OF TORTS § 332).

The Texas Supreme Court, however, more narrowly defines an invitee as "one who enters the property of another with the owner's knowledge and for the mutual benefit of both." *Id.* at 829–30. Further, "the requisite 'mutual benefit' to an invitee and an owner or occupier of property is a shared business or economic interest." *Id.* ("the business on which the visitor comes must be one of at least potential pecuniary profit to the owner or occupier") (internal citations and quotation marks omitted). The supreme court has yet to decide whether "invitee status always requires that the business benefit shared by the property visitor and the owner/occupier be economic in nature." *Id.* at 830.

The supreme court has acknowledged that business visitors, as defined in the Restatement, would likely qualify as invitees under its "potential-economic-benefit test." *Id.* at 830 n.31. However, it has not adopted the Restatement's public invitee doctrine.[6] *Id.* This Court also has not adopted the public invitee doctrine; in fact, we have specifically declined to adopt it. *Osadchy v. S. Methodist Univ.*, 232 S.W.3d 844, 849 (Tex. App.—Dallas 2007, pet. denied). Being bound by our own precedent, *see OAIC Com. Assets, L.L.C. v. White*, 293 S.W.3d 883, 885 (Tex. App.—Dallas 2009, pet. denied) (citing *Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex. 1995)), we

---

[6] Although not applicable here, the supreme court has extended invitee status to members of the public who are invited into a store that sells goods and that is open to members of the public for the purpose of allowing them to inspect and/or buy the goods. *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 139 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Carlisle v. J. Weingarten, Inc.*, 137 Tex. 220, 152 S.W.2d 1073, 1075–76 (1941)).

conclude the trial court erred in including the public invitee component in the invitee definition submitted to the jury.

We further conclude, having reviewed the entire record, that the error was harmful. The inclusion of an improper definition is "especially likely to cause an unfair trial when the trial is contested and the evidence sharply conflicting." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001); *Hawley*, 284 S.W.3d at 856. Whether Bostick was a BSW invitee when he was injured at the hospital was contested at trial. His counsel elicited testimony that the hospital's emergency department waiting area was open to the general public, and in closing argument, encouraged the jury to find Bostick an invitee based on the fact that he entered the hospital as a member of the public and for a purpose for which the premises were held open to the public. On this record, we conclude that the charge error, which allowed the jury to use an incorrect legal standard in determining liability, was likely to have resulted in an improper judgment against BSW and, therefore, constituted reversible error. Accordingly, we sustain BSW's second and third issues.

In doing so, we recognize that Texas "courts routinely rely on the Pattern Jury Charges in submitting cases to juries, and [the supreme court] rarely disapprove[s] of" them. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45 (Tex. 2007). However, they are not law, and courts must depart from them "when necessary to accurately state the law or submit a question to the jury." *JNM Express, LLC v. Lozano*, 688

–9–

S.W.3d 327, 332 n.14 (Tex. 2024); *Hollingsworth v. Parklane Corp.*, No. 05-19-01576-CV, 2021 WL 1290735, at *2 (Tex. App.—Dallas Apr. 7, 2021, no pet.) (mem. op.).

## B.     Disjunctive Liability Question

In its first issue, BSW contends the trial court erred in overruling its objection to and submitting a disjunctive liability question where: (1) Bostick pleaded his premises claim only as an invitee; (2) there is no evidence Bostick was an invitee; and (3) under Texas law, a hospital visitor is a licensee as a matter of law. Asserting that it was entitled to judgment as a matter of law, BSW requests that we reverse and either render judgment on Bostick's pleaded invitee theory or remand for a new trial utilizing the licensee liability standard.

### 1.     Sufficiency of Bostick's Pleading

Bostick's live petition at the time of trial alleged that he "was an invitee at the time of his injury as he was a guest of Defendant BSW and/or Scott & White Healthcare." The petition also recited the liability standard applicable to an invitee: that BSW "knew or should have known that the door system was unsafe for guests." The jury charge, however, provided definitions of both invitee and licensee and asked the jury to determine whether Bostick was an invitee or a licensee on BSW's premises on the occasion in question.

"Texas follows a 'fair notice' standard for pleading, which requires that "[a]n original pleading which sets forth a claim for relief . . . shall contain . . . a short

–10–

statement of the cause of action sufficient to give fair notice of the claim involved . . . ." *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018) (per curiam) (quoting TEX. R. CIV. P. 47). A petition must include "fair and adequate notice" of the factual allegations that support the claims for relief. *Id.* It is sufficient if the opposing party "can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Id.* (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). "Even the omission of an element is not fatal if the cause of action 'may be reasonably inferred from what is specifically stated.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)).

Here, the nature and basic issues of the controversy—that Bostick fell at a BSW hospital and asserted a cause of action for premises liability against BSW—were ascertainable from his petition. It is true that he specifically pleaded invitee status. However, the petition also alleged facts to support his status as both an invitee and licensee, including that BSW "knew or should have known that the door system was unsafe for guests, patients and others at the facility" and "had actual or constructive notice of the condition of the premises." Accordingly, we conclude that Bostick's petition provided fair notice of the nature and basic issues of the controversy and what testimony would be relevant to his premises liability claim and was sufficient to support submission of the disjunctive jury question.

## 2.     Sufficiency of Evidence to Support Submission of Invitee Status

BSW next asserts that there is no evidence that Bostick was an invitee to the hospital; instead, he was a licensee as a matter of law.  In doing so, BSW relies on cases in which three of our sister courts concluded that hospital visitors were licensees as a matter of law in the absence of summary judgment evidence that their presence was for their and the hospital's mutual benefit or for the purpose of conducting business with the hospital.  *See Lujan v. Methodist Hosp.*, No. 01-20-00158-CV, 2020 WL 7702185, at *3 (Tex. App.—Houston [1st Dist.] Dec. 29, 2020, pet. denied) (mem. op.) (plaintiff fell at hospital while visiting brother, a surgery patient); *Wilson v. Nw. Texas Healthcare Sys., Inc.*, 576 S.W.3d 844, 850 (Tex. App.—Amarillo 2019, no pet.) (plaintiff fell on hospital premises while visiting wife, a patient); *Wong v. Tenet Hosps. Ltd.*, 181 S.W.3d 532, 538 (Tex. App.—El Paso 2005, no pet.) (plaintiff, at hospital to visit mother, fell while walking through landscaped area between street and sidewalk adjacent to hospital).

To the extent that BSW argues generally that hospital visitors injured on hospital premises are licensees as a matter of law, we disagree.  The cases cited above indicate that a hospital visitor may be classified as a licensee.[7]  However, a

---

[7]     We note that a number of courts in other jurisdictions have concluded persuasively that hospital visitors are business invitees.  *See, e.g.*, *Ex parte Wooten*, 681 So.2d 149, 150–51 (Ala. 1996) (determining hospital visitor fell within applicable invitee definition—"[a]person who enters the land with the landowner's consent to bestow some material or commercial benefit upon the landowner"—and citing numerous decisions in other states for similar proposition).  Factors relevant to those court's decisions have included that "visitors would not be on the hospital's property but for the business conducted (the care of the hospital's patients)."  *Dupuis v. E. Idaho Health Servs., Inc.*, 168 Idaho 64, 485 P.3d 144, 149–51

–12–

premises-liability plaintiff's status remains a fact-based inquiry. *See Bradford v. Texas Health Harris Methodist Hosp.*, No. 02-20-00357-CV, 2021 WL 1800181, at \*4 n.2 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (disagreeing that "Texas law is clear that [hospital visitor] was a licensee at the time of the incident" when she proffered summary judgment evidence arguably raising a fact issue as to her status, including that she was at hospital to help son's girlfriend during childbirth). Accordingly, we must consider whether there was legally sufficient evidence that Bostick was an invitee at the time of his fall to determine whether the trial court properly submitted the disjunctive jury question.

In reviewing whether there is legally sufficient evidence to support submission of a jury question, we examine the record for evidence supporting the question's submission and ignore all evidence to the contrary. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). A trial court must "submit a question on a controlling issue if evidence to support the submission amounts to "more than a scintilla." *See*

(2021). "Allowing patients to accept visitors is a part of the hospital's business, and hospitals often provide amenities, gift and flower shops, and cafeterias intended for visitors' use and the hospital's profit." *Wilson v. Baptist Mem'l Hosp.—N. Miss., Inc.*, 93 So.3d 48, 51–52 (Miss. Ct. App. 2011) (concluding that hospital patient's visitor was business invitee under Mississippi law); *Bowins v. Euclid Gen. Hosp. Ass'n*, 20 Ohio App. 3d 29, 484 N.E.2d 203, 205 (1984) (noting that "affording patients visitors is simply part of the business of a hospital" and "[v]isitors play an integral role in the recuperation of patients and are, therefore, important to the operation of a hospital").

Applying North Carolina and Virginia law, the United States Court of Appeals for the Fourth Circuit concluded that the plaintiff, who injured herself while visiting her daughter-in-law and grandchild in a hospital, had an implied invitation to visit. *Hamlet v. Troxler*, 235 F.2d 335, 337 (4th Cir. 1956). The court explained that "hospitals expect patients to have visitors," "[s]uch visits are for the mutual advantage of the patient, the visitor[,] and the hospital," and "[n]o one would patronize a hospital which did not permit relatives and friends to visit patients at proper times." *Id.*

*Cobb v. Hansen*, No. 05-19-01327-CV, 2022 WL 3499999, at *3 (Tex. App.—Dallas Aug. 18, 2022, no pet.) (mem. op.) (citing *Cunningham v. Haroona*, 382 S.W.3d 492, 506–07 (Tex. App.—Fort Worth 2012, pet. denied)).

As a preliminary step in the legal sufficiency analysis, we must identify the standard against which the evidence is to be measured. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002). If an objection to an erroneous definition in the charge is preserved, we measure the sufficiency of the evidence against the definition that should have been used. *Seger*, 503 S.W.3d at 407–08 (citing *St. Joseph Hosp.*, 94 S.W.3d at 530).

Having previously concluded that the charge's definition of invitee was overly broad by including public invitees, we measure the sufficiency of the evidence under the supreme court's definition of invitee as one who enters the property of another with the owner's knowledge and for the mutual benefit of both, with the requisite mutual benefit being a shared business or economic interest. *See Porter*, 622 S.W.3d at 830.

Bostick testified that his purpose in visiting the hospital was to support his neighbor. The testimony of Bruce Burleson, BSW's vice-president, assistant general counsel, and designated corporate representative, also was relevant to the issue of Bostick's invitee status. Burleson testified that the hospital, as it does with patients, checks in visitors and then grants them access to the treatment area. In addition to hospital personnel escorting visitors to the hospital treatment area, there are signs to

direct visitors within the area. Burleson also explained that there was a "snack area . . . to purchase food and drinks" from vending machines in the waiting area and a cafeteria downstairs for visitors.

In this case, Bostick and Selman's wife were welcome to be in the hospital, both in the reception and treatment areas. They were escorted to the treatment area by a hospital employee who activated the automatic doors to the area. According to Burleson, the hospital is in the business of caring for patients and it permits others to visit their loved ones and friends who are patients for the benefit of the patients. He testified that having family members and friends present for support "most certainly" helps the patients and BSW "encourage[s] people to have support." It wants people to come to the hospital for their friends and family.

Having reviewed the record for evidence supporting the submission of Bostick's invitee status to the jury, we conclude that there was more than a scintilla of competent evidence to support a finding that Bostick was on BSW's premises with BSW's knowledge and for a mutual purpose connected with BSW's business— to help and support a BSW patient. *See Porter*, 622 S.W.3d 830 & n.31. Accordingly, we conclude the trial court did not err in submitting the disjunctive liability question on Bostick's status as an invitee or a licensee for the jury to decide. We overrule BSW's first issue.

–15–

In its fourth issue, BSW asserts that the trial court erred in denying its motion to transfer venue to Burnet County. Citing *Geochem Tech Corp. v. Verseckes*, 962 S.W.2d 541 (Tex. 1998), BSW contends that the "state of the record" at the time Bostick nonsuited its Travis County suit established that venue was proper in Burnet County and improper in Dallas County.

## I.     Standard of Review

We review a trial court's ruling on a motion to transfer venue de novo. *See Sazy v. J.R. Birdwell Constr. & Restoration, LLC*, No. 05-19-01351-CV, 2021 WL 1220122, at *2 (Tex. App.—Dallas Apr. 1, 2021, pet. denied) (mem. op.). We independently review the entire record to determine whether any probative evidence supports the trial court's venue decision. TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b); *Fortenberry v. Great Divide Ins. Co.*, 664 S.W.3d 807, 811 (Tex. 2023). If there is probative evidence to support the venue decision, we defer to the trial court, even if the preponderance of the evidence is to the contrary. *Fortenberry*, 664 S.W.3d at 811 (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993)). If venue is improper, however, we must reverse. TEX. CIV. PRAC. & REM. CODE § 15.064(b); *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018) ("erroneous denial of a motion to transfer venue requires the judgment's reversal and a remand for new trial").

## II. Applicable Law

Venue may be proper in more than one county under our general, mandatory, and permissive venue statutes. *See Perryman*, 546 S.W.3d at 130; *GeoChem*, 962 S.W.2d at 544. Under the portions of the general venue statute relevant to this case, a lawsuit shall be brought:

- in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; [or]

- in the county of the defendant's principal office in this state, if the defendant is not a natural person.

TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), (3).

By filing a lawsuit, the plaintiff makes the first choice of venue. *See Perryman*, 546 S.W.3d at 130; *In re Team Rocket*, 256 S.W.3d 257, 259 (Tex. 2008). The plaintiff's venue facts, when properly pleaded, are taken as true unless specifically denied. TEX. R. CIV. P. 87(3)(a). If the defendant challenges the plaintiff's venue choice through a timely motion to transfer venue, the plaintiff must present prima facie proof that venue is proper.[8] *Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 928 (Tex. App.—Dallas 2015, pet. denied); *see also* TEX. R. CIV. P. 86, 87(2)(a), 3(a). If the plaintiff does not meet its burden, "the right to choose a proper venue passes to the defendant, who must then prove that venue is proper in the

---

[8] "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX. R. CIV. P. 87(3)(a). This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz*, 868 S.W.2d at 757.

defendant's chosen county." *Johnson*, 473 S.W.3d at 928 (first citing TEX. CIV. PRAC. & REM. CODE § 15.063; and then citing *In re Mo. Pac. R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999)). The trial court evaluates venue based on the pleadings, any stipulations, and affidavits. TEX. R. CIV. P. 87(3)(b).

Once a venue determination has been made, that determination is conclusive as to those parties and claims and cannot be overcome by a nonsuit and subsequent refiling in another county. *Team Rocket, L.P.*, 256 S.W.3d at 259–60 ("Just as a decision on the merits cannot be circumvented by nonsuiting and refiling the case, a final determination fixing venue in a particular county must likewise be protected from relitigation."); *see also* TEX. R. CIV. P. 87(5). A nonsuit taken after a motion to transfer venue has been filed but before there is a venue ruling does not necessarily fix venue in the county to which transfer is sought. *GeoChem*, 962 S.W.2d at 542, 544. In that case, the trial court must consider the state of the record at the time of the nonsuit to determine the proper venue. *Id.* at 543–44. "[I]f an objection to venue in the county of suit has been filed, with or without supporting affidavits, and the plaintiff then takes a nonsuit and has not specifically denied the venue facts averred by the party seeking transfer, the venue facts alleged in the motion to transfer are taken as true." *Id.* at 543 (citing TEX. R. CIV. P. 87).

## III. Analysis

Relying on *GeoChem*, 962 S.W.2d 541, BSW asserts that the trial court erred in denying its motion to transfer venue because the motion to transfer venue filed by

Baylor Scott & White Health in Travis County established Burnet County as the county of proper venue. We disagree.

In *GeoChem*, GeoChem Tech sued GeoServ and Verseckes in Dallas County. *Id.* at. 542. GeoServ and Verseckes, who claimed to reside in both Stephens and Van Zandt Counties, each moved to transfer venue under an applicable mandatory venue provision requiring that the suit be tried in a county in which a defendant was domiciled. *Id.* Before the court ruled on the motions, GeoChem Tech nonsuited and refiled its suit in Van Zandt County. *Id.* at. 542–43. The defendants then filed motions to transfer to Stephens County, and the Van Zandt County court granted the motions. *Id.* at. 543. The court of appeals affirmed, concluding that although venue was proper in both counties, GeoChem Tech, after having first filed in an improper venue, was not entitled to refile in a second county of its choice over the defendants' objection. *Id.* at 544.

The supreme court disagreed, noting that the venue statutes do not say that the plaintiff may choose venue only once. *Id.* Instead, the trial court was required to consider the state of the record at the time of the nonsuit in making its venue determination. *Id.* at 543–544. When GeoChem Tech filed its notice of nonsuit, Verseckes's motion and amended motion to transfer venue stated that he resided in both Van Zandt and Stephens Counties. *Id.* Verseckes also had filed affidavits stating that he resided in both counties. *Id.* Geochem Tech had not specifically denied those venue facts, so the trial court had to take them as true. *Id.* (citing TEX.

R. CIV. P. 87(3)(a)). Based on the state of the record at the time of the nonsuit and the applicable venue statutes, Van Zandt County was a proper venue and GeoChem Tech did not lose the right to choose that venue when it refiled its suit. *Id.* at 544.

Like GeoChem Tech, Bostick had an absolute right to nonsuit his Travis County case. *See* TEX. R. CIV. P. 162. Because he nonsuited the case before the Travis County court made a venue determination, the proper venue was not fixed in Burnet County, the county to which Baylor Scott & White Health sought transfer. *See GeoChem*, 962 S.W.2d at 544. Instead, the Dallas County court was required to consider the state of the record, and take Baylor Scott & White Health's venue facts as true, at the time of the nonsuit when deciding the second motion to transfer venue. *See id.* at 544; *see also* TEX. R. CIV. P. 87(3)(a) ("All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party."). Those facts showed that all of the events or omissions giving rise to Bostick's claims allegedly occurred in Burnet County and that Baylor Scott & White Health had a principal office in Bell County.

For purposes of section 15.001, however, a corporation may have more than one principal office in the state. *Johnson*, 473 S.W.3d at 928 (citing *In re Mo. Pac. Ry. Co.*, 998 S.W.2d at 217); *see also* TEX. CIV. PRAC. & REM. CODE § 15.001(a). And, at the time the Dallas County court heard the second motion to transfer venue, Baylor Scott & White Health stipulated that it had a principal office in Dallas County. *See Fortenberry*, 664 S.W.3d at 814 ("parties' stipulation regarding venue

is probative evidence supporting the trial court's venue ruling"). The stipulation did not contradict or otherwise require relitigation of the venue facts alleged in Baylor Scott & White Health's first motion to transfer venue. *See In re K2 Waste Sols., LLC*, No. 13-20-00325-CV, 2020 WL 6703832, at \*2–4 (Tex. App.—Corpus Christi-Edinburg Nov. 12, 2020, no. pet.) (plaintiff properly established venue in Nueces County after taking nonsuit in Harris County when defendant maintained principal office in Nueces County and new venue fact did not contradict "fixed" venue fact at time of nonsuit that all or substantial part of events or omissions giving rise to lawsuit occurred in Harris County).

Because the venue facts before the trial court showed that venue was proper in both Burnet and Dallas Counties under the general venue statute and there was no established ground of mandatory venue, Bostick remained free to select venue in one of those counties. *See id.* Accordingly, the trial court properly denied BSW's motion to transfer venue. *See* Tex. Civ. Prac. & Rem. Code § 15.063; *see also* Tex. R. Civ. P. 87(3)(c) ("If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit . . ., then the cause shall not be transferred but shall be retained in the county of suit, unless the motion to transfer is based on the grounds that an impartial trial cannot be had in the county where the action is pending . . . or on an established ground of mandatory venue."). We overrule BSW's fourth issue.

## CONCLUSION

Having concluded that the trial court erroneously charged the jury with an incorrect legal standard for determining liability and the error was harmful, we reverse the trial court's judgment and remand the case for a new trial on Bostick's premises liability claim against BSW.

230606f.p05

/Craig Smith//
CRAIG SMITH
JUSTICE

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BAYLOR SCOTT & WHITE
HEALTH AND SCOTT & WHITE
HEALTHCARE, Appellants

No. 05-23-00606-CV     V.

JERRY BOSTICK, Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-18052.
Opinion delivered by Justice Smith.
Justices Pedersen, III, and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial on Appellee JERRY BOSTICK's premises liability claim against Appellants BAYLOR SCOTT & WHITE HEALTH and SCOTT & WHITE HEALTHCARE.

It is **ORDERED** that each party pay its own costs of this appeal.

Judgment entered this 6th day of December, 2024.